[764 NYS2d 675]

DORIS M. KENT, Appellant-Respondent, v THE PAPERT COMPA-
NIES, INC., et al., Respondents-Appellants, and LANDON
ASSOCIATES, INC., Respondent.

First Department, September 18, 2003

**APPEARANCES OF COUNSEL**

*Paul T. Shoemaker* of counsel (*Jeffrey H. Sheetz* and *John A. Kornfeld* on the brief; *Greenfield Stein & Senior, LLP*, attorneys), for appellant-respondent.

*Ira G. Rosenstein* of counsel (*René Kathawala* on the brief; *Orrick, Herrington & Sutcliffe LLP*, attorneys), for respondents-appellants.

*Arnold Chekow* of counsel (*Arnold Chekow* and *Lawrence A. Schulz*, attorneys), for respondent.

## OPINION OF THE COURT

SULLIVAN, J.

Plaintiff Doris M. Kent, born in 1940 and employed by The Papert Companies, Inc. (PCI), a Texas-based company that represented newspapers in soliciting national advertisers, as primarily a secretary/administrative assistant for its sales staff, has brought this action against PCI and S.W. Papert, III and S.W. Papert, Jr., its president and chairman, respectively, during the relevant times alleged in the complaint, alleging that PCI and the Paperts discriminated against her on the basis of her sex and age. Plaintiff also alleges sex discrimination by PCI and the Paperts and Landon Media Group LLC, sued herein as Landon Associates, Inc., when Landon, which purchased PCI's newspaper representation contracts in August 1998, elected not to hire her.

PCI, headquartered in Dallas, Texas with small offices in various cities throughout the United States, hired plaintiff in 1962 as a secretary in its New York City office. Before commencing her employment with PCI, plaintiff had held one other job after graduating from high school, a secretarial position. She did not attend college or attain any professional certifications. During her long tenure with PCI, she had never attended any seminars on sales or, indeed, any other subjects in which she claims to have experience.

In her position as a secretary for PCI, plaintiff performed general clerical and office duties, including acting as a receptionist, taking dictation, transcribing messages, drafting letters, filing, and assisting clients, as necessary, in solving administrative problems relating to PCI's services. Plaintiff regarded herself as "[s]ort of [an] office manager * * * mak-[ing] sure that * * * the office was covered, that the work went out and so on," even though these responsibilities were not part of her job description. She did not make any sales calls.

In or about 1977, plaintiff was promoted to the position of sales representative and received a corresponding pay increase. While her responsibilities now included direct contact with newspapers, unlike other sales representatives, plaintiff handled a significant amount of the clerical duties of the sales representatives within the office and for the Paperts, both of whom worked out of PCI's Dallas headquarters. In contrast to other sales representatives, plaintiff never made outside sales

calls on PCI's newspaper clients, current or prospective, and rarely made calls on its advertising agencies.

In 1984, the office manager of PCI's New York office was out of the office for significant periods of time because of illness. After his death, plaintiff approached S.W. Papert, Jr. to discuss the possibility of her appointment as his successor. At that time, S.W. Papert, Jr. cited several factors militating against such an appointment, viz., plaintiff's lack of sales experience, her lack of aggressiveness and her seeming unwillingness to increase PCI's business through face-to-face direct contact with its newspaper clients.

Ultimately, although it interviewed plaintiff for the position, PCI hired Gary Tozzi, who had significant experience in the field working for PCI's competitor, Million Markets. Tozzi's hiring was also prompted by PCI's desire to target newspapers in the northeast, an area in which it had not previously focused its efforts. In addition to his substantial experience and management record, Tozzi expressed a willingness, which he more than adequately demonstrated, to travel to facilitate client development.

In early 1988, after complaining about her title and salary, and threatening litigation, plaintiff received a $5,000 raise to a salary level of $31,000 and was named director of client relations, also referred to as director of client services, a position not previously in existence at PCI and not known in any of PCI's other offices—for PCI's New York office. Her responsibilities included servicing client needs, such as making hotel reservations, entertainment plans and travel arrangements, as well as some of the functions of a sales representative. In addition, she continued to perform clerical tasks while serving in this position. Significantly, however, plaintiff refused to travel to make sales calls, as virtually all of PCI's sales representatives were required to do. It is fair to say, based on the evidence, that after this appointment, plaintiff's sole responsibility with respect to client contact was to assist other sales representatives, including Tozzi, in servicing PCI clients.

As noted, pursuant to an asset purchase agreement dated August 1, 1998, PCI sold most of its assets, consisting primarily of its contract rights with various newspapers, to Landon, at which time PCI essentially ceased operations, except to collect monies due under the agreement and liquidate assets not included in the sale. At the same time, PCI also terminated the employment of plaintiff and the two other employees based in New York City, Thomas Petrovato, the office manager, born

in 1936, and Peter Swann, in charge of research, born in 1937. Under the purchase agreement, Landon was not obliged to offer employment to any PCI employee.

Prior to August 1, 1998, Landon and PCI had been competitors. Landon, also family owned, had its principal office in New York City; it also had offices in 11 other states. As to hiring PCI employees, Landon was guided by the following criteria:

> "One, we needed no secretarial support people and an economic strategy in the purchase itself. Two, we needed a research person who they had and the basic strategy was to take the minimum of salespeople required to meet the sales and service needs of those Papert newspapers."

Eventually, Landon hired Petrovato, the leading salesperson in PCI's New York office, who also managed the office, and Swann, PCI's researcher.

The record discloses that the Paperts had little, if any, involvement in Landon's decision not to hire plaintiff, a decision that, as the record shows, was Landon's alone, although S.W. Papert, III provided Landon's CEO, Owen Landon, Jr., with a report concerning her employment history at PCI. When asked at his deposition what he told Landon as to plaintiff's background, S.W. Papert, III, who knew plaintiff for approximately 17 years, testified: "[S]he had been hired in the early 60's as a secretarial hire, and * * * over the course of 30 years she assumed more responsibilities, had some involvement with sales, and now was our director of client services." Indeed, in their discussions prior to executing the purchase agreement, S.W. Papert, III encouraged Landon to hire as many PCI employees as possible.

On or about January 13, 1999, plaintiff commenced this action, alleging that PCI and the Paperts had discriminated against her on the basis of sex by failing to pay her a salary equal to the salaries they had paid to male employees for allegedly comparable work in violation of Labor Law § 194, New York's Equal Pay Act (EPA) (the unequal pay claim), and on the basis of age and sex in violation of Executive Law § 296 (1) (a) and Administrative Code of the City of New York § 8-107 (1) (a) (the discriminatory pay claim). Plaintiff also alleges age and sex discrimination by PCI, the Paperts and Landon in the latter's decision not to hire plaintiff after its acquisition of PCI's assets.

After the completion of discovery, PCI and the Paperts, collectively, and Landon, separately, moved for summary judgment dismissing the complaint.[1] In opposing the motion with respect to the unequal pay claim, plaintiff compared herself to two former PCI employees, John Picano and William Huck, both of whom ceased working for PCI more than four years prior to the commencement of this action. It is undisputed that Picano came to PCI in 1993 with significant experience and a reputation in newspaper advertising. For 14 years he had served as vice-president of Sawyer Ferguson Walker, a nationally known, prominent sales and marketing company engaged in the sale of retail and national advertising for newspaper clients, at which he developed and implemented sales presentations and had extensive administrative responsibilities. He had also worked as a senior vice-president for Times Mirror National, a respected retail client, and as an eastern regional manager for U.S. Suburban Press, a sales representative firm, was well known in the industry and, as a result, had significant client contacts. He was earning approximately $45,000 a year as a regional manager for U.S. Suburban Press before joining PCI, which had offered him $50,000 a year in salary. Picano left PCI in September 1994, approximately one year after he was hired.

Huck, who worked for PCI for approximately one year from 1993 to 1994, joined PCI after it acquired Branham, an advertising representative firm for newspapers with large circulations, for which he had served as vice-president. During his brief tenure with PCI, Huck was the top producer in the New York City office and spent a significant amount of time traveling and making calls at the offices of PCI's clients, whom he would regularly entertain. Huck left PCI to work as a sales representative at Sunday Metro, where he eventually became eastern sales manager.

Supreme Court granted Landon's motion. Without any discussion of the evidence, and finding questions of fact, it denied PCI and the Paperts' motion for summary judgment as to the plaintiff's wage discrimination claims, except to the extent of dismissing those discriminatory pay claims that accrued more than three years prior to the commencement of the action, as well as the unequal pay claims against the individual defendants. To the extent that these determinations are

1. The Paperts and PCI filed two motions for summary judgment; one on the discriminatory and unequal pay claims, and the other on the failure to hire claim.

adverse to their respective positions, plaintiff appeals and PCI and the Paperts cross-appeal.

■ As Supreme Court correctly ruled, plaintiff's discriminatory wage claims under the Executive Law and the Administrative Code are each governed by a three-year statute of limitations (CPLR 214 [2]; Executive Law § 297 [9]; Administrative Code § 8-502 [d]).[2] The Second Circuit (*Pollis v New School for Social Research*, 132 F3d 115 [1997]) and the other circuits that have considered the issue (*see Ashley v Boyle's Famous Corned Beef Co.*, 66 F3d 164, 168 [8th Cir 1995] [en banc]; *Brinkley-Obu v Hughes Training, Inc.*, 36 F3d 336, 351 [4th Cir 1994]; *Gandy v Sullivan County, Tenn.*, 24 F3d 861, 865 [6th Cir 1994]) have held that "a cause of action based on receipt of a paycheck prior to the limitations period is untimely and recovery for pay differentials prior to the limitations period is barred irrespective of subsequent, similar timely violations" (132 F3d at 119). This is so, because, as *Pollis* noted, "a claim of discriminatory pay is fundamentally unlike other claims of ongoing discriminatory treatment because it involves a series of discrete, individual wrongs rather than a single and indivisible course of wrongful action" (*id.*). Thus, "each receipt of a paycheck is the basis for a separate cause of action for which suit must be brought within the limitations period" (*Meckenberg v New York City Off-Track Betting*, 42 F Supp 2d 359, 371 [SD NY 1999]). Since this action was filed on January 13, 1999, any incidents of discrimination alleged to have occurred prior to January 13, 1996 are time-barred.

PCI and the Paperts argue that application of the three-year statute of limitations should have resulted in the complete dismissal of the discriminatory pay claims since plaintiff's showing reveals that any such discrimination in this regard occurred, at the latest, in 1994 when both Picano and Huck, whom she uses as her comparators in attempting to show sexual discrimination in the payment of wages, left PCI's employ. Thus, citing *Alimo v Off-Track Betting Corp.* (258 AD2d 306, 306-307 [1999]), they argue that the statute of limitations expired more than four years before the filing of this action.

---

2. The statute of limitations under New York's EPA is six years (Labor Law § 198 [3]). While plaintiff can recover for a six-year period under the EPA, her Executive Law and Administrative Code claims of pay discrimination retain importance because it is clear that, if otherwise liable, the individual Papert defendants can be held liable under their provisions while the question of individual liability under the EPA is open to question.

In pursuing this argument on the effect of the three-year statute of limitations, PCI and the Paperts misconstrue *Alimo*, which stands for nothing more than the broad proposition that the complained-of conduct, the discriminatory payment, that took place outside of the limitations period is time-barred, and mischaracterize the allegedly wrongful conduct, which is not that the Papert defendants paid Picano and Huck more money than they paid to plaintiff, but rather that they paid plaintiff less money within the limitations period than they had paid to Picano and Huck outside the limitations period (*see Brinkley-Obu*, 36 F3d at 346, 350).

*Brinkley-Obu* is directly on point. There, the court clearly limited the recovery for discriminatory pay to the statutory period (*id.* at 351). While also holding that the failure to pay the member of the lower paid sex the wage rate paid to the member(s) of the higher paid sex constituted a continuing violation, the court did so, as plaintiff correctly notes, in the context of an evidentiary ruling, holding that "the statute of limitations does not operate to limit the evidence Brinkley-Obu may introduce regarding her co-workers. In the context of the Equal Pay Act, the statute of limitations does not dictate which co-workers the plaintiff may submit as comparators" (*id.* at 346). Thus, "it is no defense [, as plaintiff alleges here,] that the unequal payments began prior to the statutory period" (*id.*), that is, before the three-year limitations period, when Picano and Huck were paid more than she was for comparable work. As *Brinkley-Obu* teaches, evidence of greater wage payments made to male counterpart(s) for similar work occurring outside the limitations period may be used to prove the existence of discrimination in that plaintiff was paid less on account of her sex within the statutory period.

Thus, plaintiff may introduce evidence that Picano and Huck were paid a greater wage in 1994 than she for similar work, and, if she proves her case, she is entitled to compensation for each diminished paycheck issued within the statutory three-year period. "The limitations period operates as a remedy bar rather than an evidentiary bar" (*Moten v American Linen Supply Co.*, 1995 WL 106340,*7 n 3, 1995 US Dist LEXIS 3107, *21 n 3 [D Kan, Jan. 24, 1995]).

Turning to the merits, New York courts track the same standards as the federal courts in cases alleging age and sex discrimination in employment (*Matter of Aurecchione v New York State Div. of Human Rights*, 98 NY2d 21, 25-26 [2002]). Insofar as is relevant herein, Executive Law § 296 (1) (a) makes

it an "unlawful discriminatory practice * * * [f]or an employer * * * because of the age * * * [or] sex * * * of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

A party alleging discrimination in employment must demonstrate that he/she is a member of the class protected by the statute, that he/she was discharged from employment or barred from a position for which he/she was qualified or paid less in such position and that his/her discharge, exclusion from employment, or receipt of lower wages occurred under circumstances giving rise to an inference of age or sex discrimination (*see McDonnell Douglas Corp. v Green*, 411 US 792, 802 [1973]; *Ferrante v American Lung Assn.*, 90 NY2d 623, 629 [1997]; *Mandell v County of Suffolk*, 316 F3d 368, 377 [2d Cir 2003]). Once a plaintiff demonstrates, by admissible evidence, a prima facie case of discrimination, the burden shifts to the defendant to provide "some legitimate, nondiscriminatory reason for the [plaintiff's] rejection" (*McDonnell Douglas Corp.*, 411 US at 802).

■ As this record shows, PCI and the Paperts have made a prima facie showing that plaintiff was not discriminated against in the payment of wages. Other than offering conclusory assertions, plaintiff has failed to make a showing by competent proof that any wage difference that may have existed between her and the two other purportedly similarly situated employees, Picano and Huck, or any other employee for that matter, was the result of her age or sex. As S.W. Papert, III testified, plaintiff was primarily a secretarial employee who, over the years, had taken on additional duties. Although in time, plaintiff had a "backup" role in sales, she continued to perform her clerical duties, including answering the telephone, scheduling meetings and filing, for the duration of her employment with PCI. In her backup sales role, which was limited to telephone calls and correspondence, "she handled advertising agencies in New York City, making ad calls on behalf of our newspaper clients as directed by either Sam, Sammy or her manager, or in backing up any of the other salespeople in the office; which would be the normal course of anyone's activities." S.W. Papert, Jr., who knew plaintiff for over three decades, confirmed that plaintiff's job was primarily in the secretarial area. In 1988, she became director of client relations, a title created for her by Gary Tozzi, her immediate supervisor, and

contacted advertisers on the telephone from time to time. By her own admission, plaintiff preferred not to travel to meet customers or engage in face-to-face contact.

In her role as director of client relations, plaintiff, described as "very reliable," provided customer services, such as obtaining theater tickets and hotel accommodations for clients while they were in New York and giving them special treatment when asked by one of the salespersons. Although plaintiff did make some contacts at advertising agencies and advertisers, this was not her "primary function." While plaintiff argues that the Paperts' description of her as an administrative assistant or support salesperson constitutes a "mischaracterization", she does so without evidentiary support. Indeed, as her own recitation of her duties makes clear, plaintiff never functioned as a principal or full-time salesperson. She considered handling the daily mail to be a "very important" part of her duties. She acknowledged that she had never attended any seminars or training sessions on sales and was unequivocal in stating that she preferred not to have to travel.

Plaintiff alleges that in 1984, when the then office manager became ill and was unable to function from day to day, she was asked to act as the "de facto" manager of PCI's New York office. She described herself as the "sort of office manager" for 15 years, while working as a secretary. The role was essentially a self-appointed position, since, as plaintiff conceded at the deposition, when asked if she considered herself to be "in charge" of the office during that period, she responded, "Well, somebody had to sort of, you know"; she stated that S.W. Papert, Jr. had asked her to "[m]ak[e] sure that the office was okay." She undertook these responsibilities without additional compensation or benefit until Tozzi's hiring in December 1987, when he replaced the office manager, who had died that year.

Although plaintiff relied on an affidavit by Tozzi in support of her description of herself as a salesperson, Tozzi, who managed PCI's New York office for 10 years, did not describe her in any way other than as a faithful and capable administrative support person. He described plaintiff as "fully qualified," not for the position of principal salesperson, but for her position as director of client relations, in which she was responsible for "servicing the clients of the Papert Companies." It was Tozzi's responsibility to "build up [the two largest revenue] accounts," which he did with the assistance of plaintiff and others who worked primarily in the office. He characterized plaintiff as an employee who "worked very closely" with him, describing her

as his "right hand person." Plaintiff performed "at home" services for the two most important clients and salespersons, when Tozzi had to "be in the field to deal with them." Even with respect to the two accounts he identified, it is clear than plaintiff's servicing of the clients was limited to the times when Tozzi "was not available." Rather than depicting plaintiff as either a full-time or principal salesperson, Tozzi's affidavit merely described her as an indispensable and loyal support person. Nothing in his affidavit or plaintiff's affidavit or testimony suggests that plaintiff had the background or sales experience that the other salespersons brought to PCI during their tenure there. Even if she could be described as a salesperson, she was not and cannot claim to have been a full-time salesperson or principal salesperson.

Plaintiff's sole assertion of age and sex discrimination is that she was paid less than younger male employees while employed by PCI. The lack of merit of plaintiff's claims is evidenced by her own deposition testimony that PCI had female sales representatives who were paid starting salaries higher than what she was paid. The record also shows that PCI employed a number of women in sales and management positions, including the manager of offices in Denver, San Francisco and Los Angeles and as sales executives in Los Angeles, Denver, Memphis and Dallas. Thus, PCI has shown that it was not biased against women.

In an attempt to support her pay discrimination claim, plaintiff, whose salary for much of her employment at PCI was, according to her account, $31,000, later raised to $33,000, identifies two male former PCI employees, Picano and Huck, who, she believes, were paid more than she. Assuming this to be so, she fails to present any evidence to raise a material issue of fact. As the undisputed evidence shows, both employees had greater direct sales experience than she had, with more valued and impressive backgrounds and skills, and were hired to undertake different job duties, including regular traveling, something plaintiff refused to do. Moreover, Picano was hired from an outside organization and, thus, PCI had to match or exceed his existing salary. PCI was well within its rights in considering the marketplace value of Picano's skills when determining his salary (*see Stanley v University of S. Cal.*, 13 F3d 1313, 1322 [9th Cir 1994]; *see also Aldrich v Randolph Cent. School Dist.*, 963 F2d 520, 526-527 [2d Cir 1992], *cert denied* 506 US 965 [1992]).

As for Huck, prior to joining PCI, he had been vice-president of Branham, which PCI had acquired. Unlike PCI, Branham

represented newspapers with large circulations. In his brief tenure with PCI, Huck was the top producer in the New York office. Moreover, unlike plaintiff, Picano and Huck were expected to cultivate business and expand on existing relationships that they had developed in the course of their careers. While plaintiff's and Picano and Huck's jobs may have been comparable, they were not "substantially equal" as is required (see Corning Glass Works v Brennan, 417 US 188, 203 n 24 [1974]; Conigliaro v Horace Mann School, 2000 WL 45439, *5, 2000 US Dist LEXIS 556, *14 [SD NY, Jan. 19, 2000, No. 95 Civ 3555 CSH]). These differences constitute legitimate, nondiscriminatory and irrefutable justification for any wage disparity between plaintiff and the two employees.

In response, plaintiff presents only a series of conclusory assertions unsupported by any facts, as for example: "Papert paid [plaintiff] substantially less than male employees who were performing jobs involving comparable levels of skill, effort and responsibility"; "The respective levels of effort, skill and responsibility of [plaintiff] and John Picano were comparable"; "The job duties of the salespeople in the New York office, including [plaintiff] and John Picano were substantially similar from one salesperson to the next. All of them had the same core set of duties and functions." Such conclusory allegations, devoid of any factual support whatever, are insufficient to defeat summary judgment dismissing plaintiff's discriminatory and unequal pay claims (see Green v Citibank, 299 AD2d 182 [2002]).

Plaintiff argues that an inference of discrimination is raised because PCI and the Paperts stubbornly refused to increase her salary of $31,000, except for a $2,000 raise in 1995, that her subsequent requests for pay raises, made through Tozzi, were "rebuffed" and that the Paperts "were particularly sticky about any request for a raise for [plaintiff]." Plaintiff alleges that the Paperts made it difficult by insisting that she call them directly and "ask for the raise herself," even though they did not insist that other employees seeking a raise personally call them. These allegations, even if true, do not give rise to an inference of discrimination, much less demonstrate that the Paperts' legitimate, nondiscriminatory justification for plaintiff's salary was a pretext. As Tozzi noted, the Paperts "resisted" his requests for raises for all of the employees that he supervised, not just plaintiff. That the Paperts insisted that plaintiff "call them directly" to ask for a raise, rather than being indicative of discriminatory animus, may well have been

reflective of a legitimate nondiscriminatory concern. After all, plaintiff had previously threatened litigation over PCI's failure to hire her as sales manager. "[D]iscrimination does not lurk behind" every decision that is petty or spiteful (*see Fisher v Vassar Coll.*, 114 F3d 1332, 1337 [2d Cir 1997]), *cert denied* 522 US 1075 [1998]).

Thus, the record shows that plaintiff has failed to demonstrate that PCI paid other employees more than she because they were younger or male. In the absence of such a showing, PCI and the Paperts' motion for summary judgment on the discriminatory pay claim should have been granted.

■ Nor has plaintiff made out a case on her unequal wage claim. Labor Law § 194, New York's EPA, requires, insofar as relevant, equal pay for those of the opposite sex "for equal work on a job the performance of which requires equal skill, effort and responsibility, and which is performed under similar working conditions." (§ 194 [1].) To establish a prima facie case of salary discrimination under the federal EPA (29 USC § 206 [d]), a party must demonstrate that the employer pays different wages to employees of the opposite sex, that the employees perform equal work on jobs requiring equal skill, effort and responsibility and that the jobs are performed under similar working conditions (*Tomka v Seiler Corp.*, 66 F3d 1295, 1310 [2d Cir 1995]). The federal EPA provision requiring "equal work" has been interpreted to mean that the jobs must be substantially equal; they need not be identical (*see e.g. Corning Glass Works v Brennan*, 417 US 188 , *supra* [1974]). But equal does not mean comparable (*see Lambert v Genesee Hosp.*, 10 F3d 46, 56 [2d Cir 1993], *cert denied* 511 US 1052 [1994]). Plaintiff has failed to show that she performed a job "substantially equal" to that of Picano or Huck. As noted, their job title—sales representative—was different from that of plaintiff, who held the position of director of client relations. While there may have been some overlap in their respective responsibilities, there is no showing that they had equal jobs, as the statute requires (*cf. e.g. Lavin McEleney v Marist Coll.*, 239 F3d 476, 480 [2d Cir 2001]). Moreover, plaintiff failed to rebut PCI's undisputed evidence that the pay differential between her salary and that of Picano and Huck was based on legitimate business considerations, which included their greater experience, prior experience in sales and market value (*see Aldrich*, 963 F2d at 526-527).

Plaintiff's complaint also alleged age and sex discrimination against PCI, the Paperts and Landon, when Landon, after

acquiring PCI's newspaper representation contracts, elected not to hire her. Supreme Court granted Landon's motion for summary judgment on plaintiff's claim of discriminatory non-hiring but, erroneously and without explanation, failed to accord similar relief to PCI and the Papers. As the record clearly shows, Landon did not hire plaintiff, who never even applied for a position with it, because it had no job openings for which she was qualified. Having acquired PCI's business, Landon, exercising prudence in its hiring practices, offered employment only to employees it needed to service the newly acquired accounts.

■ Of the elements required to state a prima facie case of discrimination in hiring (*see McDonnell Douglas*, 411 US at 802), all that plaintiff could show was that by virtue of her sex and age she was a member of a protected class and that by reason of not being hired by Landon she was adversely affected. Since, however, she was not a researcher, she cannot complain of not being hired for the position, for which she was not qualified and for which Peter Swann, PCI's researcher in the New York office, was hired. Tom Petrovato, the only other PCI employee offered a position by Landon in its New York office, had been PCI's principal salesperson and New York office manager. By not claiming to be a principal salesperson, plaintiff effectively conceded that she was not qualified for the position taken by Petrovato. No one, not even Tozzi, described plaintiff as a principal salesperson. Additionally, Petrovato was older than plaintiff, thus eliminating any basis for plaintiff's age discrimination claim. Evidence that she performed part-time backup sales work satisfactorily is not evidence that she was qualified for a full-time principal salesperson position at Landon. Since plaintiff failed to make the de minimis threshold showing of employment discrimination (*see Ferrante*, 90 NY2d at 629), her complaint against Landon was properly dismissed.

Supreme Court, however, failed to dismiss the claim against PCI and the Papers for "aiding and abetting" discrimination pursuant to Executive Law § 296 (6) in connection with the sale of PCI's representation contracts to Landon. If Landon, the decisionmaker, did not discriminate against plaintiff, then PCI and the Papers, a fortiori, cannot be held liable for discriminating against her (*see DeWitt v Lieberman*, 48 F Supp 2d 280, 293 [SD NY 1999]). Moreover, PCI and the Papers cannot be held liable for Landon's decision not to hire plaintiff because they were not her "employer" under the Executive

Law or Administrative Code, which require the existence of an actual or prospective relationship of employer and employee. The touchstone of such a relationship is "mutually beneficial economic substance" (*see State Div. of Human Rights v Board of Coop. Educ. Servs.*, 98 AD2d 958, 958 [1983], *appeal dismissed* 62 NY2d 645 [1984]). In any event, plaintiff offered no evidence, only surmise, that the Paperts had any involvement in Landon's decision not to hire her, specifically with respect to her employment record with PCI. Indeed, at her deposition, plaintiff admitted that she had no personal knowledge about whether the Paperts had any role in Landon's decision not to offer her a position. On the other hand, S.W. Papert, III testified that he attempted to persuade Landon's management to hire as many former PCI employees as possible.

We have examined the parties' remaining arguments for affirmative relief and find that they are without merit or rendered academic in light of our determination.

Accordingly, the order of the Supreme Court, Bronx County (Alan Saks, J.), entered July 22, 2002, which granted in part and denied in part defendants' motions for summary judgment dismissing the complaint, should be modified, on the law, to grant the motion of defendants The Papert Companies, Inc., S.W. Papert, III and S.W. Papert, Jr. for summary judgment dismissing the complaint and, except as thus modified, affirmed, without costs or disbursements. The Clerk is directed to enter judgment accordingly.

TOM, J.P., ANDRIAS, ROSENBERGER and FRIEDMAN, JJ., concur.

Order, Supreme Court, Bronx County, entered July 22, 2002, modified, on the law, to grant the motion of defendants-respondents-appellants for summary judgment dismissing the complaint and, except as thus modified, affirmed, without costs or disbursements. The Clerk is directed to enter judgment accordingly.