[806 NYS2d 553]

Sona Shah et al., Respondents, v Wilco Systems, Inc., Appellant.

First Department, December 29, 2005

## APPEARANCES OF COUNSEL

*Grotta, Glassman & Hoffman, P.C.,* Roseland, New Jersey (*Jonathan Meyers* of counsel), for appellant.

*McCallion & Associates, LLP,* New York City (*Kenneth F. McCallion* of counsel), for Sona Shah, respondent.

*Morelli Ratner PC*, New York City (*David S. Ratner* of counsel), for Kai Barrett, respondent.

### OPINION OF THE COURT

SULLIVAN, J.P.

In this putative class action against their former employer, plaintiffs—one an American citizen suing on behalf of other American citizen workers and the other a noncitizen suing on behalf of other foreign workers—claim, under the New York City Human Rights Law, that they were discriminated against on the basis of their respective citizenship status.

Defendant appeals from the denial of its motion for partial summary judgment, which sought dismissal of part of the first cause of action (a discriminatory discharge claim), the second cause of action based on disparate pay discrimination, and the third cause of action for breach of an implied contract, and the denial, without prejudice to renewal, of plaintiffs' motion for class certification.

Defendant Wilco Systems provides brokerage processing and related services, including software development, to the financial brokerage industry. Most of Wilco's employees are computer programmers who develop and customize GLOSS, Wilco's core product, a proprietary software program, for use by its clients. Plaintiff Sona Shah, a citizen of the United States who resides in New Jersey, worked for Wilco as a programmer from September 16, 1996 until she was terminated on April 1, 1998. The primary work of programmers is performed at client locations both in and out of New York City, and the programmers, while assigned to a project, would report to work at the client site, not at Wilco's New York office. These assignments can last months or even years. From approximately January 20, 1998 until the date of her termination, Ms. Shah was assigned to work on a project at the client's offices in Jersey City, New Jersey. Plaintiff Kai Barrett, a citizen of the United Kingdom who worked for Wilco on a visa obtained by Wilco, was employed as a junior systems administrator from January 1, 1998 until he resigned on May 5, 1998.

In December 1999, prior to commencing this action, plaintiff Shah commenced an action in the United States District Court for the Southern District of New York, seeking damages arising out of the alleged exploitation of domestic and foreign workers

in violation of title VII of the Civil Rights Act of 1964 (42 USC § 2000e-5 *et seq.*), the New York State Human Rights Law (Executive Law § 290 *et seq.*) and the New York City Human Rights Law ([NYCHRL] Administrative Code of City of NY § 8-107). The federal complaint, amended on several occasions, inter alia, to add Barrett as a plaintiff and to replead various claims, was ultimately dismissed. Insofar as relevant, the federal court declined to retain supplemental jurisdiction over plaintiffs' state and city law claims remaining after all the federal claims had been dismissed (*see Shah v Wilco Sys., Inc.,* 76 Fed Appx 383 [2d Cir 2003], *affg* 2002 WL 959557, 2002 US Dist LEXIS 8276 [SD NY] and 2001 WL 1006722, 2001 US Dist LEXIS 13393 [SD NY]; 126 F Supp 2d 641 [SD NY 2000], *mot to amend denied* 2000 WL 1876913, 2000 US Dist LEXIS 18426 [SD NY]), and dismissed the fifth amended complaint on June 18, 2002 for lack of subject matter jurisdiction.

Plaintiffs commenced this action in June 2002 as class representatives for similarly situated American and foreign workers, alleging Wilco's discrimination toward both workers of United States citizenship and foreign workers, and breach of contract with American workers by refusing to train them and assign them to work due to their status as citizens. Specifically, the first cause of action alleges that, in violation of the NYCHRL, Wilco denied Shah and other American workers training and work assignments, and then discharged them and replaced them with foreign workers who were no more qualified. As to Barrett and other foreign workers, the complaint alleges in the second cause of action that while their credentials and background in computer software were equal or superior to all other Wilco employees, they were paid at below market rates because they were noncitizens, in violation of the NYCHRL. The breach-of-contract claim—the third cause of action—alleges that training to maintain skill levels is an understood term in all employment contracts in the computer software industry, and that Wilco breached its contract with Shah and the similarly situated American workers by refusing to train them and to assign them work due to their status as United States citizens.

By notice dated April 16, 2003, Wilco moved for summary judgment pursuant to CPLR 3212 on Barrett's claim for disparate pay discrimination—the second cause of action—and Shah's claim for discriminatory discharge—part of the first cause of action—and for dismissal of Shah's claim pursuant to CPLR 3211 (a) (7) for breach of an implied contractual term to train

programmers—the third cause of action. After previously withdrawing another motion for the same relief, plaintiffs moved on May 13, 2003 for, inter alia, class certification.

After consolidating the motions for disposition, the court denied them both. The court found a question of fact as to whether Barrett was paid less than someone similarly situated, noting questions as to his title and actual role, the nature of his responsibilities and assignments, and the amount of his compensation. As to Shah's claim for wrongful termination under the NYCHRL, the court rejected Wilco's argument that since her employment was terminated in New Jersey the law did not apply, finding that she was terminated for behavior that was not limited to the New Jersey project, and that the termination was from her New York employment as well as from the New Jersey assignment. Finally, as to Shah's breach of an implied contract claim, the court found that the claim was sufficiently pleaded, rejecting defendant's contention that the pleading was too vague to support a cause of action. The court denied without prejudice plaintiffs' motion for class certification.

■ Plaintiffs' motion for class certification should have been denied with prejudice since the motion was untimely. Pursuant to CPLR 902, "[w]ithin sixty days after the time to serve a responsive pleading has expired for all persons named as defendants in an action brought as a class action, the plaintiff shall move for an order to determine whether it is to be so maintained." This filing deadline is mandatory (*see O'Hara v Del Bello,* 47 NY2d 363, 368-369 [1979]; *see also Meraner v Albany Med. Ctr.,* 211 AD2d 867 [1995], *lv dismissed* 85 NY2d 968 [1995]). On June 25, 2002, pursuant to Business Corporation Law § 306 (b), service was effected upon Wilco by delivery of the summons and complaint to the New York State Department of State. Service was complete on that date and Wilco's answer was due 30 days later (*see* CPLR 3012 [c]), i.e., July 25, 2002. Wilco's answer was served by mail on July 24, 2002, and plaintiffs belatedly served their motion for class certification on September 27, 2002.

Supreme Court, in finding the motion timely, gave plaintiffs the benefit of the five days that are added for service by mail (*see* CPLR 2103 [b] [2]). This was error. "[W]here a period of time prescribed by law is measured from the service of a paper and service is by mail, five days shall be added to the prescribed period" (*id.*). Plaintiffs assert that since the answer was served

by mail, the five days afforded by CPLR 2103 (b) (2) must be added. As CPLR 902 makes clear, however, the time period for making a motion for class certification is not measured from service of the answer but rather from the date on which the defendant's time to answer expires. In any event, the five-day extension "has no application . . . to the time limits for responding to service of process" (Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C2103:3, at 738). Accordingly, CPLR 2103 (b) (2) is inapplicable. Since the motion, which was made after September 23, 2002, the date on which the 60-day period expired, was untimely, we reject plaintiff Shah's suggestion that we uphold Supreme Court's exercise of discretion in allowing the class certification motion (cf. *Caesar v Chemical Bank,* 118 Misc 2d 118, 121 [1983], *affd* 106 AD2d 353 [1984], *mod on other grounds* 66 NY2d 698 [1985] [motion for class certification deemed timely where delay resulted from inability to define class sufficiently until Appellate Division decided appeal from related order]). In any event, no facts are alleged to support an exercise of discretion in this regard.

█ As to Shah's claim for breach of implied contract, she asserts that Wilco breached an understood and necessary term in all employment contracts in the computer software industry that employees will be trained to maintain their skill level to keep pace with changing technology. To prevail on such a claim, Shah must show that her employment was not at will, since an employer can change any term in an at-will employment and the employee's continued employment is deemed to be a consent thereto (*Shah v Wilco Sys.,* 76 Fed Appx at 385; *see Bottini v Lewis & Judge Co.,* 211 AD2d 1006, 1007-1008 [1995]; *see also Lelio v United Tech. Corp.,* 1995 WL 370994, 1995 Conn Super LEXIS 1806 [1995] [action alleging, inter alia, failure to train employee on new computer system is essentially claim for wrongful termination since employee would not be suing if employment not terminated]).

Plaintiff Shah's claim for breach of an implied contract should have been dismissed since it is clear that she was an employee at will. "Where the term of employment is for an indefinite period of time, it is presumed to be a hiring at will that may be freely terminated by either party at any time for any reason or even for no reason" (*Lobosco v New York Tel. Co./NYNEX,* 96 NY2d 312, 316 [2001]; *Murphy v American Home Prods. Corp.,* 58 NY2d 293, 300 [1983]; *see Martin v New York Life Ins. Co.,*

148 NY 117 [1895]). Shah asserts she has adequately pleaded that she was not an at-will employee and points specifically to certain written documents she characterizes as an employment agreement. These writings, however, are "silent as to the duration of employment and d[o] not place any limitation on the defendant employer's right of termination" (*Matter of New York Agency of Bank of Credit & Commerce Intl.*, 227 AD2d 145 [1996], *lv dismissed sub nom. Matter of Bell v Superintendent of Banks of State of N.Y.*, 88 NY2d 1017 [1996]). Indeed, one of the documents on which Shah relies, entitled "Main Terms & Conditions of Employment," expressly provides that, except for the probationary period, "the required notice period to be given by the company is one month."

█ Wilco's motion for summary judgment as to Shah's claim for wrongful termination under the NYCHRL should also have been granted. Under both New York State law and the New York City Administrative Code, applicability of the NYCHRL is limited to acts occurring within the boundaries of New York City (*Duffy v Drake Beam Morin*, 1998 WL 252063, *11, 1998 US Dist LEXIS 7215, *33 [SD NY]; *see* General Municipal Law § 239-s; Administrative Code of City of NY § 2-201; *see also Matter of Levy v City Commn. on Human Rights*, 85 NY2d 740, 743 [1995] [City Human Rights Commission vested with authority and jurisdiction to eliminate and prevent discrimination within New York City]). In *Wahlstrom v Metro-North Commuter R.R. Co.* (89 F Supp 2d 506, 527-528 [SD NY 2000]), for example, the court refused to apply the NYCHRL to an employee's claim for sexual harassment based on hostile work environment because the complained-of incidents took place outside of New York City.

From approximately January 20, 1998 until April 1 of that year, the date of her termination, Shah was assigned to work on a client project in Jersey City, and reported to work only at that location. Her termination was communicated to her at the client's offices in Jersey City. According to the termination letter she received, the conduct for which she was terminated included insubordination, poor or inappropriate attitude and inability to work in a team environment. Shah does not allege that the decision to terminate her was made in New York City (*see Iwankow v Mobil Corp.*, 150 AD2d 272 [1989] [cause of action alleging unlawful termination in violation of New York State Human Rights Law dismissed where employee terminated from employment in London made no allegation that discrimina-

tory act occurred in New York]). She herself states that she was told the reasons for her termination were that she had made defamatory remarks about the company and that she had encouraged employees to leave. It can be fairly inferred from her own account of the events leading up to her termination that Wilco, in offering her that explanation, was referring to her conduct at the New Jersey client site. This is especially true since her termination was "effective immediately"—a sure indication that the company wanted her off the premises forthwith. Thus, we disagree with the dissent's conclusion that Shah was terminated for conduct that took place in New York City and that the termination decision had been made there. In any event, the locus of the decision to terminate her is of no moment. What is significant is where the impact is felt. Thus, even if the termination decision had been made in New York City, the NYCHRL would not apply since its impact on her occurred in New Jersey, not within the five boroughs (*see Wahlstrom,* 89 F Supp 2d at 527-528).

Shah asserts that Wilco's misconduct was not a singular act that occurred outside of New York City but rather a systematic and continuous course of conduct. Termination is, however, a discrete act (Administrative Code of City of NY § 8-107 [1] [a]; *see Fleming v Verizon N.Y., Inc.,* 2005 WL 3066040, *7, 2005 US Dist LEXIS 28864, *20 [SD NY]; *see also Kendall v Fisse,* 149 Fed Appx 19, 21 [2d Cir]). Moreover, this argument ignores the fact that Wilco moved for summary judgment only as to the wrongful termination cause of action; it did not seek dismissal of the statutory claim for failure to train under the NYCHRL.

■ Wilco was also entitled to summary judgment on Barrett's NYCHRL disparate pay claim, predicated upon the contention that he was paid less than United States citizens. It is well settled that in determining employment discrimination claims under the New York City Human Rights Law, federal standards are applied (*Brennan v Metropolitan Opera Assn.,* 284 AD2d 66, 70 [2001]; *see Walsh v Covenant House,* 244 AD2d 214, 215 [1997]), and on a motion for summary judgment a federal employment discrimination claim is reviewed under the framework established in *McDonnell Douglas Corp. v Green* (411 US 792, 802-804 [1973]). Under that standard, where the claim is based on disparate pay, a plaintiff must first set forth a prima facie case of discrimination, i.e., that he is a member of a protected class and that he was paid less than similarly situated nonmembers of the class. The defendant may rebut the

plaintiff's showing by demonstrating a nondiscriminatory reason for the employment action, and the plaintiff may then show that the reason given is a pretext for discrimination (*Olle v Columbia Univ.*, 136 Fed Appx 383, 384 [2d Cir 2005]).

Barrett's disparate pay claim fails because he cannot establish that he was paid less than similarly situated United States citizen employees. In seeking summary judgment with respect to this claim, Wilco asserted that Barrett, whose starting salary was $45,500* (increased three months later to $47,500), worked as a junior systems administrator and reported to and was supervised by the systems administrator, Kwok Chan, whose salary at the time Barrett commenced his employment at Wilco was $45,000. Wilco also asserted that Barrett's position was filled by Kurt Lemmon, whose salary in October 1998 was $40,000 (increased six months later to $43,500). Lemmon, in turn was succeeded in the junior systems administrator position by Virginia Tam, who started in August 2000 at $35,000 (raised the following March to $37,500). Wilco asserts that Lemmon and Tam, both United States citizens, are Barrett's proper comparators since they held the same position as Barrett and reported to Chan, as Barrett did.

Barrett, on the other hand, outlining certain of his responsibilities, asserts that he should be "more properly described as a programmer who worked alongside Kwok Chan . . . rather than as Chan's subordinate," and notes that Wilco's submissions variously described him as both a systems administrator and a junior systems administrator. Even if Barrett were considered a systems administrator rather than a junior systems administrator, that would not be enough (*see Kent v Papert Cos.*, 309 AD2d 234, 245 [2003]). The individuals being compared "must be similarly situated in all material respects" (*Shumway v United Parcel Serv., Inc.*, 118 F3d 60, 64 [2d Cir 1997]; *Dorrilus v St. Rose's Home*, 234 F Supp 2d 326, 333 [SD NY 2002]; *see also Kent*, 309 AD2d at 245). "While their circumstances do not have to be identical, 'there should be a reasonably close resemblance of facts and circumstances. What is key is that they be similar in significant respects' " (*Lloyd v Bear Stearns & Co., Inc.*, 2004 WL 2848536, *7, 2004 US Dist LEXIS 24914, *19 [SD NY], quoting *Lizardo v Denny's, Inc.*, 270 F3d 94, 101 [2d Cir 2001]; *see also Mazzella v RCA Global Communications, Inc.*, 642 F Supp 1531, 1547 [SD NY 1986], *affd* 814 F2d 653 [2d Cir 1987]

---

* Barrett fails to document his contention that the correct figure is $45,000.

["Employees are not 'similarly situated' merely because their conduct might be analogized"]). Barrett fails to make the required showing. Indeed, rather than set forth "a reasonably close resemblance of facts and circumstances," Barrett's brief only sets forth examples of how his and Chan's roles and responsibilities differed.

In any event, Barrett was not paid less than Chan. In that regard, Barrett cannot rely on a comparison between his and Chan's earnings in 1997 since he did not commence his employment with defendant until January 1998. While Barrett started working in Wilco's New York office in June 1997 and apparently received certain cash payments from Wilco during the period between then and January of 1998, he concededly "receiv[ed] his normal paycheck in London" until the time he went on Wilco's payroll in New York. As noted, Barrett's starting salary was $45,500; Chan at that time was receiving $45,000. On April 6, 1998 Barrett's salary was increased to $47,500 and Chan's was increased to $50,000. Barrett resigned one month later. It is of no significance that Chan may have received a bonus in 1997 and 1998 and Barrett did not. As noted, Barrett was not a Wilco employee in 1997, and he was not entitled to one for 1998 since he was no longer on the payroll at the end of the year. Thus, during the time Barrett was employed by Wilco he and Chan received substantially the same income. Therefore, Chan cannot be considered a proper comparator.

Accordingly, the order of the Supreme Court, New York County (Marilyn Shafer, J.), entered January 6, 2004, which, inter alia, denied plaintiffs' motion for class certification without prejudice to renewal and denied defendant's motion for partial summary judgment dismissing part of the first cause of action (the discriminatory discharge claim) and the second cause of action, and for dismissal of the third cause of action, should be reversed, on the law, without costs or disbursements, plaintiffs' motion for class certification denied with prejudice and defendant's motion granted. The appeal from the order of the same court and Justice, entered January 12, 2005, which, insofar as appealable, granted renewal and adhered to the prior determination, should be dismissed, as academic, without costs or disbursements.

ELLERIN, J. (dissenting in part). I would affirm the denial of Wilco's motion for summary judgment dismissing plaintiff Shah's claim for wrongful termination under the New York City

Human Rights Law ([NYCHRL] Administrative Code of City of NY § 8-107 [1]).

Defendant argues that Shah has no cause of action under the NYCHRL for discriminatory discharge because she was discharged while working in New Jersey. In support of this argument, defendant cites *Wahlstrom v Metro-North Commuter R.R. Co.* (89 F Supp 2d 506 [SD NY 2000]) and *Duffy v Drake Beam Morin* (1998 WL 252063, 1998 US Dist LEXIS 7215 [SD NY]). These cases are inapposite, as in *Wahlstrom* the plaintiff complained of a single act of sexual harassment that occurred while the train on which she was an assistant conductor was stationed in White Plains, New York, and in *Duffy* the plaintiffs worked exclusively in the defendant's branch offices outside of New York City before being allegedly wrongfully terminated.

In contrast, Shah began her employment with defendant in the United States in its New York City office, the company's only branch office in this country, and her first two assignments outside that office were to clients' offices in New York City. Although she was discharged while working at a third client's office in New Jersey, the discharge allegedly was in retaliation for speaking to other employees about defendant's employment practices and trying to advise the foreign employees about their rights—in defendant's New York City office. As the motion court emphasized, Shah was terminated not merely from her temporary assignment in New Jersey, but from her employment with defendant in New York City, for conduct that took place in New York City, as a result of a decision that was made in New York City. Thus, Shah felt the impact of the discharge in New York City, and the NYCHRL is applicable to her cause of action.

WILLIAMS, GONZALEZ and McGUIRE, JJ., concur with SULLIVAN, J.P.; ELLERIN, J., dissents in part in a separate opinion.

Order, Supreme Court, New York County, entered January 6, 2004, reversed, on the law, without costs or disbursements, plaintiffs' motion for class certification denied with prejudice and defendant's motion for partial summary judgment granted. Appeal from order, same court, entered January 12, 2005, dismissed as academic, without costs or disbursements. Motion seeking leave to reargue and/or submit a supplemental brief denied.