[878 NYS2d 320]

Howard Hoffman, Appellant, v Parade Publications et al.,
Respondents.

First Department, May 7, 2009

## APPEARANCES OF COUNSEL

*Cohen, Weiss & Simon LLP*, New York City (*James L. Linsey, Robin H. Gise* and *Oriana Vigliotti* of counsel), for appellant.

*Proskauer Rose LLP*, New York City (*Elise M. Bloom* and *Alychia L. Buchan* of counsel), for respondents.

## OPINION OF THE COURT

Saxe, J.

This appeal raises the issue of New York courts' subject matter jurisdiction over claims of discrimination under the New York State Human Rights Law (NYSHRL) (Executive Law § 290 *et seq.*) and the New York City Human Rights Law (NYCHRL) (Administrative Code of City of NY § 8-101 *et seq.*) arising from the termination of plaintiff's employment where the decision to terminate was made in this state, and the call to the employee was made from this state, but the employee worked out of an office located in another state, resided in another state, and received the call communicating his termination while in another state.

According to the complaint, plaintiff was employed by defendants from 1992 until his termination on January 1, 2008, at which time he was 62 years old. From the beginning of the employment, except for the period of July 2001 to September 2002, when he worked in New York, plaintiff was almost exclusively based in defendants' Atlanta, Georgia office. In September 2002, plaintiff was promoted to managing director for the newspaper relations group, a position he held until his termination. His responsibilities consisted of developing newspaper accounts for defendants' Parade magazine in 12 states located in the South and West.

Plaintiff describes his responsibilities as that of a "traveling salesmen" who had "frequent in-person meetings in New York City." While defendants maintain that he operated from the Atlanta office, plaintiff characterizes the Atlanta office as a "mail-drop office" and denies that he could be characterized as an Atlanta employee. It appears from the allegations that plaintiff reported to, and occasionally traveled to meet with, Parade's management in New York.

On October 2, 2007, while in Atlanta, plaintiff received a telephone call from Randy Siegel, president and publisher of Pa-

rade in New York, informing him that defendants had decided to close the Atlanta office and terminate both plaintiff's and his assistant's employment. On October 12, 2007, plaintiff went to New York to meet with Siegel to discuss the termination and to suggest an alternative to discharge. On October 16, 2007, Siegel telephoned plaintiff, then in West Virginia on business, and told him that his alternative plan had been rejected and that the Atlanta office would be closed on January 1, 2008, at which time plaintiff's employment would end.

Plaintiff commenced this age discrimination action under the NYSHRL and the NYCHRL, alleging that he was the oldest employee in the newspaper relations group and the only one who was terminated, that the economic rationale given for his termination was pretextual, and that he had indisputably been an exemplary employee. Plaintiff also alleges that his former responsibilities were transferred to an employee in defendants' New York office who, at the age of 56, was "considerably younger" than plaintiff.

Defendants moved to dismiss the complaint under CPLR 3211 (a) (2) for lack of subject matter jurisdiction and under CPLR 3211 (a) (7) for failure to state a cause of action. The motion court agreed that it lacked subject matter jurisdiction over plaintiff's claims under the NYCHRL and NYSHRL, holding as a matter of law that the impact of defendants' alleged misconduct was not felt inside either New York City or New York State, as required by *Shah v Wilco Sys., Inc.* (27 AD3d 169 [2005], *lv dismissed in part, denied in part* 7 NY3d 859 [2006]).

We conclude that the complaint should not have been dismissed on a CPLR 3211 motion. The so-called "impact" rule *as expressed in Shah should not be applied so broadly as to preclude a discrimination action where the allegations support the assertion that the act of discrimination, the discriminatory decision, was made in this state and city.*

The New York State and New York City Human Rights Laws were enacted to combat discrimination within this state and city respectively (*see* Executive Law § 296 [1] [a] [NYSHRL]; Administrative Code of City of NY § 8-107 [1] [a] [NYCHRL]). The issue of subject matter jurisdiction arises where the alleged discrimination occurs in more than one state.

The assertion of this Court in *Shah,* that the NYCHRL is "limited to acts occurring within the boundaries of New York City" (27 AD3d at 175), remains true in its essence, but does not resolve the question of subject matter jurisdiction in the

case of acts occurring in this as well as other jurisdictions. To add a complication to the issue, I note that the NYSHRL by its terms may be applied to acts committed outside New York State if committed against a New York State resident (*see* Executive Law § 298-a [1])—although this provision is inapplicable in this instance, since plaintiff is a nonresident.

The issue here is how we define the concept of "acts occurring within . . . New York." Under what, if any, circumstances may a nonresident be entitled to the coverage of the NYSHRL?

"When a non-resident seeks to invoke the coverage of the New York City and State human rights laws, he or she must show that the alleged discrimination occurred within New York City and New York State respectively" (*Rylott-Rooney v Alitalia-Linee Aeree Italiane-Societa Per Azioni*, 549 F Supp 2d 549, 551 [SD NY 2008]). Application of logic and common sense alone would dictate that if an employer located in New York made discriminatory hiring or firing decisions, those decisions would be properly viewed as discriminatory acts occurring within the boundaries of New York. In fact, early case law from this Court supports that view.

The first such case involved a 1971 claim of sex discrimination brought before the New York City Commission on Human Rights (*see Matter of Walston & Co. v New York City Commn. on Human Rights*, 41 AD2d 238 [1973]). In *Walston*, an Illinois resident applied to the Gary, Indiana office of a securities trading firm to open a commodity futures account for her, and was initially told that the firm did not handle commodity accounts for women. When she expressed her displeasure, the manager of the Gary office sought approval for opening the account from the vice-president in charge of commodity accounts, who was located in Chicago. The Gary office then sent her three forms to complete; one of the three was a "woman's commodity account form," a form that male applicants were not required to sign. The customer signed and returned the other two forms to the firm's New York City office but refused to sign the woman's commodity account form. When she called the New York City office the following month to inquire, she was informed that her application was refused because of her failure to sign that form.

After the customer filed a complaint with the New York City Commission on Human Rights, the firm challenged the Commission's jurisdiction; the Commission rejected the challenge and ordered a hearing. Supreme Court granted the firm's CPLR article 78 petition challenging the Commission's assertion of ju-

risdiction through its holding a hearing. This Court reversed and dismissed the firm's petition, observing that the issue of jurisdiction was one of fact, because there was a factual dispute about the location from which the denial of the application emanated, and the record was "too incomplete to make an informed determination" as to "whether the allegedly discriminatory acts occurred in New York or elsewhere" (*id.* at 241, 242).

The second applicable case is *Iwankow v Mobil Corp.* (150 AD2d 272 [1989]), in which this Court dismissed the NYSHRL claim of age discrimination on grounds of lack of subject matter jurisdiction, because the asserted jurisdictional nexus to New York did not include a discriminatory act. The plaintiff, who had been employed by the defendant corporation in London, alleged that his termination was "part of a world-wide reduction in force which was decided upon at corporate headquarters in New York"; however, he did *not* allege "that the decision to implement this reduction in an age-discriminatory manner originated at corporate headquarters" (*id.* at 273, 274). This Court explained that *"absent an allegation that a discriminatory act was committed in New York* or that a New York State resident was discriminated against, New York's courts have no subject matter jurisdiction over the alleged wrong" (*id.* at 274 [emphasis added]).

Following *Walston* and *Iwankow*, it seems apparent that a supportable allegation by an out-of-jurisdiction resident that a discriminatory employment decision was made against him or her in New York may be treated as a discriminatory act committed in New York and therefore as an act covered by New York's Human Rights Law. Yet, as the motion court recognized, this Court recently said that the place where the act of discrimination occurred is irrelevant (*see Shah*, 27 AD3d at 176). In granting summary judgment dismissing a discrimination claim brought under NYCHRL, the Court in *Shah* stated that "the locus of the decision to terminate [the plaintiff] is of no moment. What is significant is where the impact is felt" (*id.*).

After consideration of the *Shah* decision and the federal case law it cites in support, we decline to apply that portion of the *Shah* decision as the settled law of this State. Initially, we observe that the quoted language is not necessary to the holding, and therefore constitutes obiter dictum. As the *Shah* Court acknowledged, the plaintiff in that case, like the plaintiff in *Iwankow*, did not even "allege that the decision to terminate

her was made in New York City" (*id.* at 175, citing *Iwankow v Mobil Corp., supra*).

The *Shah* Court's grant of summary judgment dismissing the discrimination claim for lack of subject matter jurisdiction relied on the facts pointing exclusively to New Jersey events. Shah resided in New Jersey, and was working for a client located in New Jersey, was informed of her termination at that New Jersey office, and the reasons she was given for her termination—insubordination, poor or inappropriate attitude, and inability to work in a team environment—concerned her conduct at that New Jersey office. Indeed, the Court asserted that it could be "fairly inferred" from Shah's own account that the explanation for her termination was based upon her conduct at the New Jersey site; in fact, the majority explicitly rejected the dissenting Justice's suggestion that there were allegations from which it could be inferred that the termination decision was made in New York City (27 AD3d at 176).

Accordingly, we do not take issue with the result in *Shah*, insofar as it says it is based on facts exclusively pointing not only to an impact in New Jersey but also to a termination decision made in New Jersey, and the absence of an allegation that a discriminatory employment decision was made in New York. However, we view that portion of the *Shah* decision that asserts that "the locus of the decision to terminate her is of no moment" as overbroad and unnecessary, lacking sufficient support in prior case law. We adopt and employ the reasoning of the District Court in *Rylott-Rooney v Alitalia-Linee Aeree Italiane-Societa Per Azioni* (549 F Supp 2d 549, 551-552 [2008]), in which the court pointed out that the aspect of *Shah* precluding subject matter jurisdiction unless the impact was within this jurisdiction was dictum, and that prior New York case law had turned on whether it was alleged that a discriminatory act occurred in New York.

Examination of the Southern District Court case relied upon in *Shah*, as well as other federal cases employing a similar "impact" rule, fails to disclose any convincing reason to support adoption of a rule that a New York court does not have subject matter jurisdiction where a discriminatory decision was made here, but the impact may be said to have been felt elsewhere. Indeed, the reasoning of those federal cases has been convincingly challenged elsewhere.

While the *Shah* decision provided no direct citation for its assertions that "the locus of the decision to terminate [the

plaintiff] is of no moment" and that "[w]hat is significant is where the impact is felt," that aspect of its discussion ended with a citation to *Wahlstrom v Metro-North Commuter R.R. Co.* (89 F Supp 2d 506 [SD NY 2000]).

*Wahlstrom* concerned a female railroad conductor's claim of verbal and physical assault and sexual harassment by a coworker. While some of her numerous causes of action were upheld, the court granted summary judgment dismissing her causes of action against Metro-North Railroad under the NYSHRL and the NYCHRL. Relying on evidence that the employer had reasonably investigated the complaint of discriminatory conduct and taken corrective action, the court concluded that no reasonable finder of fact could conclude that Metro-North supported or condoned the coworker's conduct (*id.* at 527).

As to the claim under the NYCHRL, the District Court dismissed it because the incidents arguably comprising sexual harassment by the coworker that formed the basis for the discrimination claim took place in White Plains, outside of New York City. The court observed that "[t]he only allegation of sexual harassment that occurred in New York City was [the harasser's] final statement to plaintiff: 'You better shape up . . . or you're going to get it,'" and that "[t]his statement, standing alone, hardly constitutes sexual harassment, let alone a hostile work environment" (*id.*).

The *Wahlstrom* court properly rejected the plaintiff's suggestion that subject matter jurisdiction under the NYCHRL could be based on the facts that Metro-North's equal employment opportunity policies are distributed from its New York City offices, and the decisions to schedule, adjourn, and reschedule the coworker's disciplinary hearing were made there (*id.* at 527-528). Importantly, there was no claim that a *discriminatory* decision had been made in the employer's New York City office. Since decisions to adjourn or reschedule a disciplinary hearing or the issuance of equal employment opportunity policy statements cannot be permitted to alone form the basis for an assertion of discrimination, the court could have granted summary judgment dismissing the NYCHRL claim without further analysis. Yet, it went on to gratuitously assert that the NYCHRL only applies where the actual impact of the discriminatory conduct or decision is felt within the five boroughs, even if a discriminatory decision is made by an employer's New York City office, citing *Duffy v Drake Beam Morin* (1998 WL 252063, *12, 1998 US Dist LEXIS 7215, *36 [SD NY, May 19, 1998]) and *Lightfoot v*

*Union Carbide Corp.* (1994 WL 184670, *5, 1994 US Dist LEXIS 6191, *17 [SD NY, May 12, 1994], *affd* 110 F3d 898 [2d Cir 1997]).

However, neither *Duffy* nor *Lightfoot* provides appropriate support for our adoption of the "impact" rule. In *Lightfoot*, the plaintiff was employed in Connecticut by Union Carbide when his job was terminated as part of a "reduction in force" program effectuated by a "forced-ranking" system; the plaintiff offered proof establishing that his age was a factor in his termination. Notably, while the court upheld the plaintiff's federal and state age discrimination claims, it dismissed the plaintiff's claims under the NYCRHL "because there are no allegations that the defendants intentionally discriminated against him within the boundaries of New York City" (1994 WL 184670 at *5, 1994 US Dist LEXIS 6191 at *17). Of course, it was not enough that the company's use of the reduction in force program had been approved at a meeting in New York City; it had to be alleged that the decision to implement the program in a discriminatory manner had been made in New York City. That pleading failure would have been sufficient to justify a dismissal if the claim had been by a nonresident. However, the court in *Lightfoot*, while acknowledging that the plaintiff was living in New York City at the time and occasionally worked at home, also went on to employ the "impact" analysis, and found that the impact on the plaintiff had "occurred while he was employed in Connecticut" (*id.*). This remark is puzzling, to say the least. In fact, under *Shah*, the plaintiff's residence in New York City would have been a critical consideration.

Following the *Lightfoot* decision, in *Duffy*, the Southern District Court dismissed the New York City and New York State Human Rights Laws claims of a plaintiff who worked in New Jersey and the New York City Human Rights Law claims of another plaintiff who worked on Long Island. It observed that the Human Rights Laws were limited to discriminatory acts occurring within their respective jurisdictions and that "nothing in the record suggest[ed] that either [plaintiff] was subjected to discriminatory conduct by [the defendant] in New York City" (1998 WL 252063 at *12, 1998 US Dist LEXIS 7215 at *35). It went on to reason that

> "even if, as [the plaintiffs] claim, the decision to fire them was made by [the defendant employer] at its headquarters in New York City, that fact, standing alone, is insufficient to establish a violation of the

City Human Rights Law when the employees affected by that decision did not work in New York City" (*id.*).

The *Lightfoot* and *Duffy* cases remind us of the important distinction between a mere decision to terminate an employee and a *discriminatory* decision to terminate an employee. For instance, a nationwide or worldwide corporate staff-reduction policy may be decided on in a corporate headquarters in New York but implemented in a discriminatory manner only in an out-of-town branch office. Only if a discriminatory decision was made in New York may a claim of discrimination be actionable here. Thus, the allegations of a complaint must include a founded assertion that a firing decision was discriminatory in nature.

The *Duffy* decision is far from clear as to whether the plaintiffs asserted that the decision to fire them was made on a discriminatory basis. Other grounds for declining to apply *Duffy*'s ruling are discussed in a decision by the U.S. Court of Appeals for the District of Columbia (*see Schuler v Pricewater-houseCoopers, LLP*, 514 F3d 1365 [DC Cir 2008]). The *Schuler* court begins its analysis by pointing out that the New York State Human Rights Law itself "contains no requirement that the unlawful discriminatory impact occur in New York" (at 1377). It points out that the NYSHRL even specifically applies to acts committed outside New York State if committed against a New York State resident (citing Executive Law § 298-a [1]). Finally, it observes that the cases upon which the *Duffy* court relied "merely require[ ] [plaintiffs] to allege an in-state discriminatory act" and "say[ ] nothing about where plaintiffs may 'suffer[ ] discrimination'" (*id.* at 1378), and concludes "no New York authority . . . suggest[s] that the impact of a discriminatory act must be felt within New York for the NYHRL to apply" (*id.* at 1379).

We agree with the *Schuler* court's view, and find nothing in the cited federal cases to convince us that an out-of-jurisdiction plaintiff is precluded from interposing claims under the NYSHRL and the NYCHRL when the New York employer is alleged to have made its employment decisions in a discriminatory manner here. We also note that the impact analysis suggested in *Duffy* and *Lightfoot* has not been uniformly adopted in federal decisions under New York law; a number of cases have held that the place where a discriminatory employment decision was made is the focus of the subject matter jurisdiction

analysis (*see Hart v Dresdner Kleinwort Wasserstein Sec., LLC*, 2006 WL 2356157, 2006 US Dist LEXIS 56710 [SD NY 2006]; *Tebbenhoff v Electronic Data Sys. Corp.*, 2005 WL 3182952, 2005 US Dist LEXIS 29874 [SD NY 2005], *affd* 244 Fed Appx 382 [2d Cir 2007]; *Torrico v International Bus. Machs. Corp.*, 319 F Supp 2d 390 [SD NY 2004]; *Launer v Buena Vista Winery, Inc.*, 916 F Supp 204 [ED NY 1996]).

Finally, we observe that it would be contrary to the purpose of both statutes to leave it to the courts of other jurisdictions to appropriately respond to acts of discrimination that occurred here.

Since for purposes of this motion pursuant to CPLR 3211 we must accept as true the allegations that the decision to terminate plaintiff's employment was made in New York City *and* that the economic reasons given by the employer for the decision to terminate him were a pretext for discrimination on the basis of his age (*see Sokoloff v Harriman Estates Dev. Corp.*, 96 NY2d 409, 414 [2001]), we cannot reject as a matter of law at this juncture plaintiff's claim that a New York City and New York State employer made a discriminatory decision here. If that assertion is ultimately established, it will be enough to demonstrate that the New York court has subject matter jurisdiction over his claims.

Accordingly, the appeal from the order of the Supreme Court, New York County (Martin Shulman, J.), entered July 7, 2008, which granted defendants' motion to dismiss the complaint, is deemed to be an appeal from the judgment, same court and Justice, entered July 24, 2008 (CPLR 5501 [c]), dismissing the complaint, and, the appeal so considered, the judgment should be reversed, on the law, without costs, and the complaint reinstated.

ANDRIAS, J.P., ACOSTA and RENWICK, JJ., concur.

Appeal from order, Supreme Court, New York County, entered July 7, 2008, deemed to be an appeal from the judgment, same court, entered July 24, 2008, and so considered, said judgment reversed, on the law, without costs, and the complaint reinstated.