# IN THE SUPREME COURT OF IOWA

No. 95 / 07–0158

Filed October 24, 2008

**STATE OF IOWA,** ex rel. **ALICIA CLAYPOOL**,

    Appellant,

vs.

**MICHAEL EVANS, MTE PROJECT DEVELOPMENT,** and **ANDERSON-BOGERT ENGINEERS & SURVEYORS, INC.**,

    Appellees.

-------------------------------------------------------------

**STATE OF IOWA,** ex rel. **JEFF FRANK**,

    Appellant,

vs.

**MICHAEL EVANS,** and
**MTE PROJECT DEVELOPMENT,**

    Appellees,

and

BLUE JAY RIDGE CONDOMINIUM
OWNERS ASSOCIATION,

    Defendant.

Appeal from the Iowa District Court for Johnson County, Amanda Potterfield, Judge.

Plaintiffs appeal the district court decision granting the defendants' motions for summary judgment on the grounds their claims are barred by the statutes of limitations. **AFFIRMED.**

Thomas J. Miller, Attorney General, and Teresa Baustian, Assistant Attorney General, for appellant.

Richard S. Fry, Theresa C. Davis, and Sarah J. Gayer of Shuttleworth & Ingersoll, P.L.C., Cedar Rapids, for appellees Evans and MTE Project Development.

Webb L. Wassmer of Simmons Perrine PLC, Cedar Rapids, for appellee Anderson-Bogert Engineers & Surveyors, Inc.

**WIGGINS, Justice**.

In this case the plaintiffs claim the district court erred in finding the statutes of limitations for unfair or discriminatory practices in housing under the Iowa Civil Rights Act barred their claims. Because we find the statutes of limitations apply to the plaintiffs, including the State, and in one action the statutes of limitations begins to run on the date when the unit was purchased, and in the other action the statutes of limitations begins to run when the defendants sold the last unit, we affirm the decision of the district court granting the defendants' motions for summary judgment.

## I. Background Facts and Proceedings.

We find the undisputed facts as follows. In August 1999, Jeff Frank and his wife purchased a condominium at Blue Jay Ridge Condominiums in Coralville from Michael T. Evans Construction, a corporation registered as Chael Design and Development, Inc. Chael designed, developed, constructed, and sold Blue Jay Ridge Condominiums. Frank was the first purchaser of a unit in the development. The development included seven buildings, each having four units on the ground floor.

Frank suffers from osteoarthritis and progressive degeneration of the joints in his hips and knees. This condition forces him to use a cane, crutches, and a walker depending upon the current state of his symptoms. The doctors have said Frank will likely need to use a wheelchair in the future. The design and construction of the condominium development included obstructed sidewalks that caused Frank difficulty accessing his unit from the parking area. About two to three months after moving in, Frank complained to Evans about the

obstructed sidewalks, but Evans ignored the complaints, so Frank's accessibility problem continued for the duration of his occupancy.

On April 8, 2002, he filed a complaint with the Iowa Civil Rights Commission against West Winds Management Company, Wendell Miller, an employee of West Winds Management Company, Blue Jay Ridge Condominium Owners Association, and Michael Evans, alleging the construction and design of the condominium development blocked access to his unit in violation of the Iowa Civil Rights Act. West Winds managed the condominium development. On November 6, 2003, the commission received a report describing Blue Jay Ridge as highly inaccessible. In July 2003, prior to the time the commission received the report, Frank moved out of the development.

Frank elected not to file his own lawsuit, but chose to have the commission file a civil rights petition on his behalf under Iowa Code section 216.17A(1)(*a*) (2003). On December 10, 2004, in a proceeding separate from Frank's, Alicia Claypool, the Iowa Civil Rights Commissioner, filed a complaint on behalf of the commission pursuant to Iowa Code section 216.15(1). She filed the complaint against Michael Evans, MTE Project Development, and Anderson-Bogert Engineers & Surveyors, Inc. alleging the condominium development was highly inaccessible and violated the Iowa Civil Rights Act. Anderson-Bogert provided design services for Blue Jay Ridge Condominiums. On June 2, 2005, the executive director of the commission filed a written request with the attorney general asking him to file suit under Iowa Code section 216.17A(9) claiming the design and construction of the condominium development led to a denial of housing rights that raised an issue of general public importance.

On November 28, 2005, the attorney general filed separate actions on behalf of Frank and Claypool. Both petitions alleged the defendants discriminated in the sale or made housing unavailable under Iowa Code section 216.8A(3)(*a*)(1), (*c*)(3), discriminated in terms, conditions or privileges of sale and also in providing services or facilities according to section 216.8A(3)(*b*)(1), (*c*)(3), and failed to design and construct the dwelling in compliance with accessibility and adaptability features according to section 216.8A(3)(*c*)(3). The State filed Frank's action based on the discriminatory sale of the unit to him, while the State filed Claypool's action based on the discriminatory sale of the condominium units to the public.

Anderson-Bogert moved for summary judgment in the Claypool case, stating the State's claim was time-barred by the two-year statute of limitations for civil rights actions, and the requirement that a civil rights complaint be filed with the commission within 180 days of the discriminatory practice. A few weeks later MTE and Evans also filed motions for summary judgment against the State in both the Claypool and the Frank cases. These motions for summary judgment stated the claims were time-barred by the 180-day complaint period and the applicable statute of limitations.

Frank purchased his unit more than 180 days prior to the filing of his complaint with the commission and more than two years prior to the attorney general filing the petition in the district court on his behalf. The sale of the last unit in the condominium development occurred more than 180 days prior to Claypool filing her complaint with the commission and more than two years prior to the attorney general filing the Claypool petition in the district court.

The district court combined the cases for a hearing on the motions for summary judgment. During the hearing, the parties agreed there was essentially no dispute as to the facts in the case; thus, the dispute concerned the application of the statutes of limitations to the facts. The district court granted the defendants' motions for summary judgment. The State dismissed, without prejudice, the remaining defendant that had not filed a motion for summary judgment, Blue Jay Ridge Condominium Owners Association. The State appeals.

## II. Scope of Review.

The case is on appeal from a motion for summary judgment. The district court enters summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 1.981; *Robinson v. Fremont County*, 744 N.W.2d 323, 325 (Iowa 2008). If no genuine issue of material fact exists, our job is to determine whether the district court correctly applied the law. *Kragnes v. City of Des Moines*, 714 N.W.2d 632, 637 (Iowa 2006). Because no genuine issue of material fact exists as to the facts surrounding the statutes of limitations, our decision will turn on the construction of the statutes of limitations contained in the Iowa Civil Rights Act. We review questions of statutory construction for correction of errors at law. *Estate of Ryan v. Heritage Trails Assocs., Inc.*, 745 N.W.2d 724, 728 (Iowa 2008).

## III. Statutory Framework.

Chapter 216 of the Code, The Iowa Civil Rights Act, defines a "person" as "one or more individuals, partnerships, associations, corporations, legal representatives, trustees, receivers, and the state of Iowa and all political subdivisions and agencies thereof." Iowa Code

§ 216.2(11).  The relevant parts of the Act define unfair or discriminatory housing practices as follows:

> 3*a.*    A person shall not discriminate in the sale or rental or otherwise make unavailable or deny a dwelling to a buyer or renter because of a disability of any of the following persons:
>
> (1)  That buyer or renter.
>
> . . .
>
> *b.*    A person shall not discriminate against another person in the terms, conditions, or privileges of sale or rental of a dwelling or in the provision of services or facilities in connection with the dwelling because of a disability of any of the following persons:
>
> (1)  That person.
>
> . . .
>
> *c.*    For the purposes of this subsection only, discrimination includes any of the following circumstances:
>
> . . .
>
> > (3)    In connection with the design and construction of covered multifamily dwellings for first occupancy after January 1, 1992, a failure to design and construct those dwellings in a manner that meets the following requirements:
> >
> > > (a) The public use and common use portions of the dwellings are readily accessible to and usable by persons with disabilities.
> > >
> > > (b) All doors designed to allow passage into and within all premises within the dwellings are sufficiently wide to allow passage by persons with disabilities in wheelchairs.
> > >
> > > (c) All premises within the dwellings contain the following features of adaptive design:
> > >
> > > > (i) An accessible route into and through the dwelling.
> > > >
> > > > (ii) Light switches, electrical outlets, thermostats, and other environmental controls in accessible locations.

(iii) Reinforcements in bathroom walls to allow later installation of grab bars.

(iv) Usable kitchens and bathrooms so that a person in a wheelchair can maneuver about the space.

*Id.* § 216.8A(3).

The Act contains two statutes of limitations. The first statute of limitations provides, "[a] claim under this chapter shall not be maintained unless a complaint is filed with the commission within one hundred eighty days after the alleged discriminatory or unfair practice occurred." *Id.* § 216.15(12). The Code defines the person that can file the claim as "[a]ny person claiming to be aggrieved by a discriminatory or unfair practice . . . ." *Id.* § 216.15(1). The second statute of limitations provides:

2. *a.* An aggrieved person may file a civil action in district court not later than two years after the occurrence of the termination of an alleged discriminatory housing or real estate practice, or the breach of a mediation agreement entered into under this chapter, whichever occurs last, to obtain appropriate relief with respect to the discriminatory housing or real estate practice or breach.

*b.* The two-year period does not include any time during which an administrative hearing under this chapter is pending with respect to a complaint or charge based on the discriminatory housing or real estate practice.

*Id.* § 216.16A(2)(*a*), (*b*).

**IV. Analysis.**

Section 216.15(12) requires a person to file a complaint with the commission "within one hundred eighty days after the alleged discriminatory or unfair practice occurred." *Id.* § 216.15(12). Section 216.16A(2) requires a person to file a civil action "not later than two years after the occurrence of the termination of an alleged discriminatory

housing or real estate practice." *Id.* § 216.16A(2)(*a*). To determine whether Frank and Claypool timely filed their complaints with the commission under section 216.15(12), we must determine when the alleged discriminatory housing or real estate practice occurred. To determine whether Frank and Claypool timely filed their petitions in the district court under section 216.16A(2), we must determine when the termination of an alleged discriminatory housing or real estate practice occurred.

In construing the statutes involved, we must determine legislative intent. *Auen v. Alcoholic Beverages Div.,* 679 N.W.2d 586, 590 (Iowa 2004). We determine legislative intent from the words chosen by the legislature, not what it should or might have said. *State v. Dohlman,* 725 N.W.2d 428, 431 (Iowa 2006). Under the guise of construction, we may not extend, enlarge, or otherwise change the meaning of a statute. *Auen,* 679 N.W.2d at 590.

The State and Claypool, acting on behalf of the commission, contend the statutes of limitations do not apply to them. The Iowa Civil Rights Act defines a "person" as an individual, the state of Iowa, and all of its agencies. Iowa Code § 216.2(11). Therefore, the limitations of actions contained in sections 216.15(12) and 216.16A(2) apply to the Claypool complaint and petition.

Under sections 216.15(12) and 216.16A(2), we must first determine the alleged discriminatory housing or real estate practice upon which Frank and Claypool base their claims. They both claim the defendants discriminated in the sale or made housing unavailable under Iowa Code section 216.8A(3)(*a*)(1), (*c*)(3), discriminated in terms, conditions or privileges of sale and in providing services or facilities according to section 216.8A(3)(*b*)(1), (*c*)(3), and failed to design and construct the

dwelling in compliance with accessibility and adaptability features according to section 216.8A(3)(*c*)(3).

Section 216.8A(3) prohibits discrimination in the "sale" of a dwelling. Iowa Code § 216.8A(3)(*a*), (*b*). Section 216.8A(3)(*c*) defines the "discrimination" referred to in subsection (3) of section 216.8A as "the design and construction" of an inaccessible dwelling. *Id.* § 216.8A(3)(*c*). Therefore, the crux of these claims is that the defendants provided design and construction services for the development that made it inaccessible to a person with disabilities, then sold it to Frank and the other residents. Because the alleged discriminatory practice complained of is the sale of a housing unit designed and constructed to be inaccessible to a person with disabilities, it is clear the alleged discriminatory housing or real estate practice occurred and terminated at the time of the sale of the relevant units. *See Garcia v. Brockway*, 526 F.3d 456, 461–64 (9th Cir. 2008) (construing a similar federal statute of limitations in a similar fashion).

Accordingly, Frank's 180-day period for filing his complaint with the commission and two-year period to file his petition with the district court began in August of 1999 when he purchased his unit. He filed his complaint in April of 2002 and his petition in November of 2005. Consequently, Frank's complaint and petition were untimely, and the statutes of limitations bar his action.

In Claypool's action, the undisputed facts are that the sale of the last unit in the condominium development occurred more than 180 days prior to the filing of the Claypool complaint, and more than two years prior to the filing of the Claypool petition. Thus, Claypool's complaint and petition were also untimely, and the statutes of limitations bar her action.

Claypool and Frank suggest an interpretation known as the encounter theory should apply to this case. Under the encounter theory, "a disabled homeseeker's cause of action does not become complete until he personally encounters the defendant's inaccessible building." Robert G. Schwemm, *Barriers to Accessible Housing: Enforcement Issues in "Design and Construction" Cases under the Fair Housing Act*, 40 U. Rich. L. Rev. 753, 850 (2006). The plain language of the Iowa statute is not consistent with such a reading. The plain language of the statute defines the discriminatory practice as the *sale* of a housing unit designed and constructed to be inaccessible to a person with disabilities. Therefore, the statutes of limitations begin to run on the sale of the unit as to Frank, and on the last sale of the units as to Claypool. The encounter theory is more consistent with a tort theory, whereas Frank and Claypool have brought statutory claims under the Iowa Civil Rights Act. Tort law cannot "trump statutory provisions that deal expressly with the statute of limitations." *Garcia*, 526 F.3d at 464.

Finally, Frank and Claypool argue that the alleged discriminatory practice continued after the sale of the units; therefore, under a continuing violation theory the statutes of limitations did not run. The Supreme Court defines a continuing violation as one in which the plaintiff "challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 381, 102 S. Ct. 1114, 1125, 71 L. Ed. 2d 214, 230 (1982). However, we must distinguish the continuing violation theory from the continuing ill effects suffered from the original violation.

A recent Supreme Court decision focused on the issue of continuing violation versus continuing effect. *Ledbetter v. Goodyear Tire*

*& Rubber Co.*, 550 U.S. 618, _____, 127 S. Ct. 2162, 2167–69, 167 L. Ed. 2d 982, 990–93 (2007). There the plaintiff made a Title VII pay discrimination claim. *Id.* at ____, 127 S. Ct. at 2165, 167 L. Ed. 2d at 988. The issue decided by the Court was when the discriminatory act occurred. *Id.* The plaintiff claimed the discriminatory act occurred when she received lower pay. *Id.* at ____, 127 S. Ct. at 2166, 167 L. Ed. 2d at 988. The employer claimed the discriminatory act occurred at the time the plaintiff received low performance scores, the cause for her receiving lower pay. *Id.* at ____, 127 S. Ct. at 2166, 167 L. Ed. 2d at 989. The Supreme Court found that the giving of low performance scores was the discriminatory act, and the lower pay she received as a result of those low scores was a continuing effect of those low scores. *Id.* at _____, 127 S. Ct. at 2169, 167 L. Ed. 2d at 992–93. In *Ledbetter*, the Court noted it is necessary for a court to identify the specific discriminatory practice at issue when applying a statute of limitations. *Id.* at _____, 127 S. Ct. at 2167, 167 L. Ed. 2d at 989. Accordingly, the Supreme Court stated the "charging period ran from the time when the discrete act of alleged intentional discrimination occurred, not from the date when the effects of this practice were felt." *Id.* at ____, 127 S. Ct. at 2168, 167 L. Ed. 2d at 992.

In this case the specific discriminatory practice was the sale of a housing unit designed and constructed to be inaccessible to a person with disabilities. This discriminatory practice was complete upon the sale. The lack of accessibility of the non-compliant development was a continuing effect of the discriminatory practice rather than a continuing violation. *Garcia*, 526 F.3d at 462–63; *Moseke v. Miller & Smith, Inc.*, 202 F. Supp. 2d 492, 507 (E.D. Va. 2002). Had the legislature wanted developers and designers of the unit to be liable after the sale, it could

have expressly provided for continuing liability in the Iowa Civil Rights Act.

## V. Disposition.

Because Frank's and Claypool's actions are barred by the statutes of limitations, we affirm the judgment of the district court granting the defendants' motions for summary judgment.

**AFFIRMED.**