# IN THE SUPREME COURT OF IOWA

No. 13–1411

Filed March 6, 2015

**ERIN DINDINGER, LISA LORING,** and **ELIZABETH FREUND,**

Plaintiffs,

vs.

**ALLSTEEL, INC.** and **SCOTT MILLS,**

Defendants.

---

Certified questions of law from the United States District Court for the Southern District of Iowa, Stephanie M. Rose, United States District Court Judge.

A federal district court certified two questions in a suit for wage discrimination under the Iowa Civil Rights Act. **CERTIFIED QUESTIONS ANSWERED.**

Ann E. Brown-Graff and Brad J. Brady of Brady Preston Brown PC, Cedar Rapids, for plaintiffs.

Frank Harty, Debra Hulett, and Frances M. Haas of Nyemaster Goode, P.C., Des Moines, for defendants.

Jill Zwagerman of Newkirk Law Firm, P.L.C., Des Moines, and Melissa C. Hasso of Sherinian & Hasso Law Firm, West Des Moines, for amicus curiae Iowa Affiliate of the National Employment Lawyers Association.

**MANSFIELD, Justice.**

We have been asked to answer two certified questions of Iowa law in an employment discrimination case filed in federal district court. They are:

> 1. Do Iowa Code section 216.6A, Iowa's equal pay law, and the accompanying remedial language in section 216.15(9)(a)(9), apply to permit a plaintiff to pursue wage discrimination claims under section 216.6A that accrued before April 28, 2009, the date Iowa's General Assembly made these statutes effective, in the absence of express legislative language making these laws retroactive?

> 2. If a prevailing plaintiff may only recover damages under Iowa Code section 216.6A and the accompanying remedial language in section 216.15(9)(a)(9) prospectively, may the same plaintiff also recover damages for prevailing on a wage discrimination claim under section 216.6, and if so, what types of damages may that plaintiff recover and for what period of time?

For the reasons discussed herein, we answer the questions as follows:

> 1. No.

> 2. Yes. Recoverable damages for loss of income are based on discriminatory wage payments that occurred within 300 days before the plaintiff filed a complaint with the civil rights commission.

## I. Background Facts and Proceedings.

Plaintiff Erin Dindinger worked for the defendant company, Allsteel, Inc., from December 1999 through May 20, 2011. Plaintiff Lisa Loring has worked at Allsteel since 2005. Defendant Scott Mills was the vice president of operations at Allsteel and the supervisor of Dindinger's direct supervisor during this period. The plaintiffs allege that during their time with the company, Allsteel paid them less than male employees performing similar work.

Dindinger, Loring, and a third plaintiff (Elizabeth Freund) brought suit against Allsteel in the United States District Court for the Southern District of Iowa on October 10, 2011, alleging Allsteel had violated the Federal Equal Pay Act of 1963. *See* 29 U.S.C. § 206(d) (2006). On February 28, 2012, plaintiffs amended their complaint to include claims by Dindinger and Loring that Allsteel had violated Iowa Code section 216.6A, which was enacted in 2009 and expressly prohibits wage discrimination. *See* 2009 Iowa Acts ch. 96, § 2 (codified at Iowa Code § 216.6A (2011)). The amended complaint also included claims by Dindinger and Loring that Allsteel had violated Federal Title VII and violated the ICRA as it stood *before* 2009. The amended complaint further recited that Dindinger and Loring had filed employment discrimination complaints with the Iowa Civil Rights Commission (ICRC) on October 12, 2011, as required by Iowa Code section 216.16. *See* Iowa Code § 216.16(1). According to the complaint, the ICRC issued right-to-sue notices to Dindinger and Loring on December 29. *See id.* § 216.16(2)(*b*), (3)(*a*).

On January 4, 2013, the defendants moved for partial summary judgment. Among other things, the defendants urged the court to dismiss Loring and Dindinger's claims under Iowa Code section 216.6A to the extent they arose before the effective date of that provision (July 1, 2009). Dindinger and Loring countered that section 216.6A should apply retroactively and should permit them to recover lost wages for the entire period they were discriminatorily paid.

The court heard oral arguments on March 26, 2013. The district court's subsequent September 3 certification order provides the background to the present appeal:

At oral argument, the Court asked both sides whether certifying questions of Iowa law to the Iowa Supreme Court would be helpful. Both sides responded that their respective positions were clearly correct and that certification was not necessary. Defendants reevaluated their position, and filed a Motion to Certify arguing that certification would aid in untangling the issue of whether Section 216.6A and its complementary subsection, Iowa Code § 216.15(9)(a)(9), apply retroactively to plaintiffs' claims. Plaintiffs filed a resistance, defendants filed a reply, and the Court issued its Ruling Granting Defendants' Motion to Certify. The Court also, on its own motion, notified the parties that it may certify the additional and alternative question of the availability and length of time for Section 216.6 wage discrimination damages . . . .

(Footnote omitted.) (Citation omitted.)

After permitting the parties to submit briefs and proposed language on the certification issues, the district court decided to certify two questions to this court to clarify Iowa law with respect to wage discrimination claims.

## II. Standard of Review.

As we have said recently,

It is within our discretion to answer certified questions from a United States district court. Iowa Code § 684A.1 (stating the court "may" answer a certified question). We may answer a question certified to us when (1) a proper court certified the question, (2) the question involves a matter of Iowa law, (3) the question "may be determinative of the cause . . . pending in the certifying court," and (4) it appears to the certifying court that there is no controlling Iowa precedent. *Id.*

*Life Investors Ins. Co. of Am. v. Estate of Corrado*, 838 N.W.2d 640, 643 (Iowa 2013).

## III. Analysis.

**A. First Certified Question: Is Iowa Code Section 216.6A Prospective or Retroactive?** In 2009, the general assembly adopted an act "providing that wage discrimination is an unfair employment practice under the Iowa civil rights Act and providing an enhanced remedy."

2009 Iowa Acts ch. 96, preamble.  Among other things, the amendment added a new section to the ICRA, section 216.6A.  *See id.* § 2.

Previously, the ICRA made it an unfair or discriminatory practice for an employer "to refuse to hire, accept, register, classify, or refer for employment, to discharge any employee, or to otherwise discriminate in employment . . . because of the age, race, creed, color, sex, sexual orientation, gender identity, national origin, religion, or disability" of the employee or job applicant.  Iowa Code § 216.6(1)(*a*).  The new section, section 216.6A, provides as follows:

**216.6A Additional unfair or discriminatory practice — wage discrimination in employment.**

1. *a.* The general assembly finds that the practice of discriminating against any employee because of the age, race, creed, color, sex, sexual orientation, gender identity, national origin, religion, or disability of such employee by paying wages to such employee at a rate less than the rate paid to other employees does all of the following:

(1) Unjustly discriminates against the person receiving the lesser rate.

(2) Leads to low employee morale, high turnover, and frequent labor unrest.

(3) Discourages employees paid at lesser wage rates from training for higher level jobs.

(4) Curtails employment opportunities, decreases employees' mobility, and increases labor costs.

(5) Impairs purchasing power and threatens the maintenance of an adequate standard of living by such employees and their families.

(6) Prevents optimum utilization of the state's available labor resources.

(7) Threatens the well-being of citizens of this state and adversely affects the general welfare.

*b.* The general assembly declares that it is the policy of this state to correct and, as rapidly as possible, to eliminate, discriminatory wage practices based on age, race,

creed, color, sex, sexual orientation, gender identity, national origin, religion, and disability.

2. *a.* It shall be an unfair or discriminatory practice for any employer or agent of any employer to discriminate against any employee because of the age, race, creed, color, sex, sexual orientation, gender identity, national origin, religion, or disability of such employee by paying wages to such employee at a rate less than the rate paid to other employees who are employed within the same establishment for equal work on jobs, the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions. An employer or agent of an employer who is paying wages to an employee at a rate less than the rate paid to other employees in violation of this section shall not remedy the violation by reducing the wage rate of any employee.

*b.* For purposes of this subsection, an unfair or discriminatory practice occurs when a discriminatory pay decision or other practice is adopted, when an individual becomes subject to a discriminatory pay decision or other practice, or when an individual is affected by application of a discriminatory pay decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

Iowa Code § 216.6A(1)–(2). The section goes on to delineate certain affirmative defenses for the employer:

3. It shall be an affirmative defense to a claim arising under this section if any of the following applies:

*a.* Payment of wages is made pursuant to a seniority system.

*b.* Payment of wages is made pursuant to a merit system.

*c.* Payment of wages is made pursuant to a system which measures earnings by quantity or quality of production.

*d.* Pay differential is based on any other factor other than the age, race, creed, color, sex, sexual orientation, gender identity, national origin, religion, or disability of such employee.

*Id.* § 216.6A(3).

The legislature simultaneously enacted a separate, enhanced remedy for violations of section 216.6A. 2009 Iowa Acts ch. 96, § 3 (codified at Iowa Code § 216.15(9)(*a*)(9)). Specifically:

> (9) For an unfair or discriminatory practice relating to wage discrimination pursuant to section 216.6A, payment to the complainant of damages for an injury caused by the discriminatory or unfair practice which damages shall include but are not limited to court costs, reasonable attorney fees, and either of the following:

> (a) An amount equal to two times the wage differential paid to another employee compared to the complainant for the period of time for which the complainant has been discriminated against.

> (b) In instances of willful violation, an amount equal to three times the wage differential paid to another employee as compared to the complainant for the period of time for which the complainant has been discriminated against.

Iowa Code § 216.15(9)(*a*)(9). In contrast, plaintiffs prevailing on any other ICRA claim are entitled to recover court costs, reasonable attorney fees, and "actual damages." *Id.* § 216.15(9)(*a*)(8).

The first certified question requires us to determine whether section 216.6A and the enhanced remedy in section 216.15(9)(*a*)(9) should apply retroactively to claims arising before the statute's July 1, 2009 effective date.[1] "Legislative intent determines if a court will apply a

---

[1]The certified question assumes these ICRA amendments became effective April 28, 2009, i.e., the date the governor approved them. *See* 2009 Iowa Acts ch. 96 ("Approved April 28, 2009."). However, legislation passed at a regular session does not go into effect until July 1 of the session year unless the legislature expressly provides for a different date, and it did not do so here. *See* Iowa Const. art. III, § 26 ("An act of the general assembly passed at a regular session of a general assembly shall take effect on July 1 following its passage unless a different effective date is stated in an act of the general assembly.").

Another federal district court in Iowa has ruled that Iowa Code section 216.6A applies prospectively only. *See Forster v. Deere & Co.*, 925 F. Supp. 2d 1056, 1065–66 (N.D. Iowa 2013); *Lenius v. Deere & Co.*, 924 F. Supp. 2d 1005, 1014–15 (N.D. Iowa 2013). The court there concluded that "the statute created, defined, and regulated a

statute retrospectively or prospectively." *Iowa Beta Chapter of Phi Delta Theta Fraternity v. State*, 763 N.W.2d 250, 266 (Iowa 2009). There is a general presumption that newly enacted statutes apply only prospectively. *See* Iowa Code § 4.5 ("A statute is presumed to be prospective in its operation unless expressly made retrospective."); *Frideres v. Schiltz*, 540 N.W.2d 261, 264 (Iowa 1995) (discussing the legislative preference for prospectivity). We have summarized the relevant principles in the past:

> It is well established that a statute is presumed to be prospective only unless expressly made retrospective. Statutes which specifically affect substantive rights are construed to operate prospectively unless legislative intent to the contrary clearly appears from the express language or by necessary and unavoidable implication. Conversely, if the statute relates solely to a remedy or procedure, it is ordinarily applied both prospectively and retrospectively.
>
> . . . Substantive law creates, defines and regulates rights. Procedural law, on the other hand, is the practice, method, procedure, or legal machinery by which the substantive law is enforced or made effective. Finally, a remedial statute is one that intends to afford a private remedy to a person injured by a wrongful act. It is generally designed to correct an existing law or redress an existing grievance.

*Anderson Fin. Servs., LLC v. Miller*, 769 N.W.2d 575, 578 (Iowa 2009) (internal quotation marks omitted).

The first step in determining whether a statute has retroactive effect is to assess whether the legislature expressly stated its intent that a statute should apply retrospectively. *Id.* Here, the legislature did not include express language in section 216.6A to make it retroactive.

_____

new right." *Forster*, 925 F. Supp. 2d at 1066; *Lenius*, 924 F. Supp. 2d at 1015. That ruling, of course, is not binding on us.

The next step is to ascertain whether "the statute affects substantive rights or relates merely to a remedy." *Id.* at 579. If the law "is substantive, we presume it operates prospectively only." *Id.* If the statute is remedial, we presume it operates retrospectively. *Id.* A statute is not remedial merely because one might say, colloquially, that its purpose is to "remedy" a defect in the law. *See id.* at 580. "[I]f a mere legislative purpose to remedy a perceived defect in the law made a statute remedial, very few statutes would not fall within this classification." *Id.* at 580 n.4. Thus, in *Anderson Financial*, our most recent foray into this subject, we held that a cap on certain finance charges was not "remedial" but "substantive," because it effected a substantive change in permissible conduct. *Id.* at 580–81.

When a statute creates new rights or obligations, it is substantive rather than procedural or remedial. *See id.* at 578, 580–81; *see also Davis v. Jones*, 247 Iowa 1031, 1033, 1035–36, 78 N.W.2d 6, 7–9 (1956) (holding a new statute enabling jurisdiction over certain nonresidents could not be considered remedial or procedural because "a new right was created by the amendment"). In *Hiskey v. Maloney*, we declined to retroactively apply a statute that established a new tax liability because retroactive application "does not extend to statutes creating new rights or imposing new obligations." 580 N.W.2d 797, 799 (Iowa 1998). Despite the fact the legislature characterized the statute in *Hiskey* as remedial, such "labeling . . . [does not] override the statutory presumption of prospective application . . . when the statute in question creates a new personal liability." *Id.* On the other hand, "we do allow a statute to apply retrospectively when the statute provides an additional remedy to an already existing remedy or provides a remedy for an already existing loss." *Iowa Beta Chapter*, 763 N.W.2d at 267.

Dindinger and Loring maintain that section 216.6A is not substantive. They argue the section is merely procedural because it shifts the burden of proof from the employee to the employer. They further contend section 216.6A is merely remedial because it provides an enhanced remedy—double or treble damages—for a preexisting cause of action of wage discrimination.

After careful consideration, we disagree with Dindinger and Loring. Under preexisting law, unlawful discrimination occurred only when a person was subjected to adverse treatment "because of" her membership in a protected class. *See* Iowa Code § 216.6(1)(*a*). It is true that the *McDonnell Douglas* framework could assist the plaintiff in proving discriminatory intent by allowing an inference of intent and shifting the burden of production to the employer when the plaintiff makes a certain showing. *See, e.g., Jones v. Univ. of Iowa*, 836 N.W.2d 127, 147–48 (Iowa 2013) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)). Yet if each side met its burden of production and made its required showing, the plaintiff still had the ultimate burden of proving unlawful discrimination was "the real reason." *Smidt v. Porter*, 695 N.W.2d 9, 14–15 (Iowa 2005); *see also Farmland Foods, Inc. v. Dubuque Human Rights Comm'n*, 672 N.W.2d 733, 741 n.1 (Iowa 2003) ("It is not necessary to follow the *McDonnell Douglas* analysis once a case has been fully tried because the burden ultimately rests with the plaintiff to establish the claim and show the adverse employment action resulted from discrimination."); *Bd. of Supervisors of Buchanan Cnty. v. Iowa Civil Rights Comm'n*, 584 N.W.2d 252, 255 (Iowa 1998) (stating that the pre-2009 "employment

discrimination provisions of chapter 216 . . . require a showing of intent to discriminate").[2]

In contrast, under section 216.6A of the Iowa Code, an employer that pays lower wages for equal work to a person in a protected class violates the law *without regard to* the employer's intent. Note the distinct wording of section 216.6A. It makes it illegal "to discriminate against any employee . . . by paying wages to such employee at a rate less than the rate paid to other employees." Iowa Code § 216.6A(2)(*a*). Thus, rather than requiring discrimination based on protected status to be *independently proved*, section 216.6A *defines* discrimination as the act of paying lower wages. As the amicus curiae supporting the plaintiffs puts it,

> [T]he Iowa Legislature enacted § 216.6A to ensure that all forms of discrimination would be exposed and addressed— even those that were falling through the cracks under traditional discrimination analysis.
>
> . . . .
>
> Section 216.6A addresses this issue by including additional remedies and making the claim intent-neutral. Under § 216.6A, it does not matter why the wages are discriminatorily less; it matters only that they are less.

Section 216.6A of the Iowa Code therefore creates an entirely new cause of action: strict liability on the part of employers for paying unequal wages. Its wording is similar to the Federal Equal Pay Act. *Compare id.*, *with* 29 U.S.C. § 206(d)(1) (2012) (providing that no employer subject to the Act "shall discriminate . . . between employees on

---

[2]Of course, prior law also recognized "disparate impact" claims. *See Hy-Vee Food Stores, Inc. v. Iowa Civil Rights Comm'n*, 453 N.W.2d 512, 517–18 (Iowa 1990). But for such a claim, the plaintiff generally must show that "a particular employment practice has an adverse impact on a protected group." *Id.* at 517. Thus, to establish liability, the plaintiff still had to prove more than a difference in wages.

the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex"). We previously recognized that "[u]nlike Title VII and the employment discrimination provisions of chapter 216, which require a showing of intent to discriminate based on gender, the Equal Pay Act requires no showing of discriminatory intent." *Bd. of Supervisors of Buchanan Cnty.*, 584 N.W.2d at 255; *see also Bauer v. Curators of Univ. of Mo.*, 680 F.3d 1043, 1045 (8th Cir. 2012) (contrasting the Equal Pay Act and Title VII, and noting that the former, "a strict liability statute, does not require plaintiffs to prove that an employer acted with discriminatory intent; plaintiffs need show only that an employer pays males more than females").

The plaintiffs argue that, as a practical matter, section 216.6A of the Iowa Code only shifts the burden of proof from the plaintiff to the defendant because one of the statutory affirmative defenses allows the employer to prove the wage differential was due to a factor other than the employee's protected status. *See* Iowa Code § 216.6A(3)(*d*). But this does not alter the fact that the legislation establishes a new cause of action with fewer elements than before. And it is not open to dispute that there are some cases where the employee will be able to prevail now and would not have been able to prevail before. In that middle group, section 216.6A imposes liability that did not previously exist.

In some ways, section 216.6A presents a clearer case for prospective-only operation than a law that made it easier to obtain personal jurisdiction by personal service, *see Davis*, 247 Iowa at 1033–36, 78 N.W.2d at 7–9, or a law that imposed personal in addition to in rem liability for nonpayment of property taxes, *see Hiskey*, 580 N.W.2d at 798–99. Neither of those statutes altered the scope of what was and

was not permissible conduct under Iowa law.  *See id.* at 798–99; *Davis*, 247 Iowa at 1033–36, 78 N.W.2d at 7–9.  Yet we considered both to be substantive rather than remedial or procedural changes.  *See Hiskey*, 580 N.W.2d at 799; *Davis*, 247 Iowa at 1036, 78 N.W.2d at 8–9; *cf. State ex rel. Turner v. Limbrecht*, 246 N.W.2d 330, 333 (Iowa 1976) (finding that the consumer fraud act had retroactive effect because "the attorney general was still required to allege and prove reliance and damages," and "[a]ccordingly we find no difference between the actionable fraud alleged by the attorney general and the common law action for fraud available to injured parties on an individual basis prior to the advent of [the act]"), *overruled on other grounds by State ex rel. Miller v. Hydro Mag, Ltd.*, 436 N.W.2d 617, 622 (Iowa 1989).[3]

---

[3]Dindinger and Loring cite three cases where this court gave retroactive effect to legislation.  *See City of Waterloo v. Bainbridge*, 749 N.W.2d 245, 250–51 (Iowa 2008); *Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Shell Oil Co.*, 606 N.W.2d 370, 375–76 (Iowa 2000); *Emmet Cnty. State Bank v. Reutter*, 439 N.W.2d 651, 653–54 (Iowa 1989).  We find them distinguishable.  The statute involved in *Bainbridge* was "not a substantive statute."  749 N.W.2d at 250–51.  It simply had the effect of shortening the time for a tax sale buyer to exercise its option to give notice of the right of redemption.  *Id.*  The statute in *Tank Fund*, according to the legislative findings, established a clean-up fund for "past and existing petroleum leaks."  606 N.W.2d at 375 (emphasis omitted) (internal quotation marks omitted).  This "clearly revealed an intent for the act to apply retroactively."  *Id.* at 376.  The statute in *Emmet County* required state banks that purchased land at a foreclosure sale to offer it to the prior owner on the same terms before consummating any resale.  439 N.W.2d at 653.  We noted that the law referred to resales of "agricultural land held pursuant to this subsection" and thus "appl[ied] to agricultural land owned by a state bank on the effective date of the amendment, regardless of when the land was acquired."  *Id.* at 654 (emphasis omitted) (internal quotation marks omitted).

In a sense, the laws in *Bainbridge* and *Emmet County* were not retroactive at all because they only set standards for conduct occurring *after* their enactment—i.e., a city could seek title to abandoned land, *Bainbridge*, 749 N.W.2d at 250–51, and a state bank had to offer foreclosed property on the same terms to the prior owner before selling it to a new owner, *Emmet Cnty.*, 439 N.W.2d at 653.  Here, by contrast, Dindinger and Loring seek to have the substantive law set forth in Iowa Code section 216.6A applied to conduct that *predated* the enactment of the statute, i.e., things their employer did or did not do before the law was adopted in 2009.  In the *Tank Fund* case, the legislature overcame the presumption of prospective-only operation by expressly

As the title of section 216.6A indicates, its purpose is to recognize an "[*a*]*dditional* unfair or discriminatory practice – wage discrimination in employment." Iowa Code § 216.6A (emphasis added); *cf. In re Estate of Sampson*, 838 N.W.2d 663, 667 (Iowa 2013) (relying on section titles as an aid to interpretation); *State v. Tague*, 676 N.W.2d 197, 201–03 (Iowa 2004) (same). Liability for this additional practice creates a new obligation for employers. Apparently, therefore, the general assembly believed it was making a *substantive* change in the law, which again, is the trigger for a presumption of forward-only effect. *See State v. Jones*, 298 N.W.2d 296, 298 (Iowa 1980) ("The legislature is presumed to know the state of the law, including case law, at the time it enacts a statute."); *see also Iowa Beta Chapter*, 763 N.W.2d at 266 ("Legislative intent determines if a court will apply a statute retrospectively or prospectively.").[4]

In sum, after taking into account (1) Iowa Code section 4.5, (2) our precedent that substantive changes in the law are presumed to apply prospectively only, (3) the fact that section 216.6A creates a new strict liability cause of action for wage discrimination, and (4) the general

_____

stating that the law applied to "past and existing" leaks. 606 N.W.2d at 375–76 (emphasis omitted).

[4]The plaintiffs also argue that we should follow federal precedent that has applied the Lilly Ledbetter Fair Pay Act of 2009 (FPA), Pub. L. No. 111–2, 123 Stat. 5 (codified as amended in scattered sections of 29 U.S.C. and 42 U.S.C. (2012)), amending federal civil rights law, retroactively to conduct that occurred before its 2009 enactment. *See, e.g.*, *Kramer v. Bd. of Educ. of Balt. Cnty.*, 788 F. Supp. 2d 421, 426–28 (D. Md. 2011); *Russell v. Cnty. of Nassau*, 696 F. Supp. 2d 213, 227 (E.D.N.Y. 2010); *Schengrund v. Pa. State Univ.*, 705 F. Supp. 2d 425, 432–33 (M.D. Pa. 2009). However, two distinctions should be noted. The FPA did not amend the underlying substantive law; it merely changed the statute of limitations. *See* Lilly Ledbetter Fair Pay Act § 3 (codified at 42 U.S.C. § 2000e–5(e)). Further, the FPA is expressly retroactive; Congress provided that it would take effect "as if enacted on May 28, 2007" and that it "appl[ied] to all claims of discrimination in compensation . . . that are pending on or after that date." *Id.* § 6 (codified at 42 U.S.C. § 2000e–5).

assembly's own statement that it was legislating an "[a]dditional unfair or discriminatory practice," Iowa Code § 216.6A, we conclude that section 216.6A applies on a prospective basis only to conduct occurring after its effective date of July 1, 2009.

**B. Second Certified Question: To What Extent May a Plaintiff Recover Damages for Wage Discrimination Under Iowa Code Section 216.6?** Because we have concluded that Iowa Code section 216.6A operates prospectively and not retroactively, we now turn to the district court's second certified question. This concerns the ability of plaintiffs to recover damages for wage discrimination under the preexisting law, namely, section 216.6.[5]

Section 216.6 states in relevant part,

It shall be an unfair or discriminatory practice for any:

*a.* Person to refuse to hire, accept, register, classify, or refer for employment, to discharge any employee, or to otherwise discriminate in employment against any applicant for employment or any employee because of the age, race, creed, color, sex, sexual orientation, gender identity, national origin, religion, or disability of such applicant or employee . . . .

Iowa Code § 216.6(1)(*a*). Prevailing plaintiffs can recover "actual damages, court costs and reasonable attorney fees." Iowa Code § 216.15(9)(*a*)(8).

---

[5]The defendants urge that the plaintiffs have not pled and thus have not preserved a *wage discrimination claim* under Iowa Code section 216.6 in federal court. However, resolving that question of federal court claim preservation is not our responsibility.

As noted above, we do have discretion not to answer a certified question. *See Iowa Right to Life Comm., Inc. v. Tooker*, 808 N.W.2d 417, 427 (Iowa 2011). Here, we do not have "a situation where the answers to the questions are fact-dependent or the facts are in conflict." *Id.* Accordingly, we will answer the second question and leave any question of claim preservation to the federal district court to resolve.

Claims under section 216.6 are also subject to a limitations period: "[A] claim under this chapter shall not be maintained unless a complaint is filed with the [Iowa Civil Rights C]ommission within three hundred days after the alleged discriminatory or unfair practice occurred." Iowa Code § 216.15(13). This provision mirrors similar language in federal law. *Compare id., with* 42 U.S.C. § 2000e–5(e)(1) (requiring a charge to be filed "within one hundred and eighty days after the alleged unlawful employment practice occurred" or "within three hundred days after the alleged unlawful employment practice occurred," depending on the situation).

We have no difficulty concluding that wage discrimination is potentially actionable under Iowa Code section 216.6. The section prohibits an employer from "otherwise discriminat[ing] in employment." Iowa Code § 216.6(1)(*a*). This catchall provision demonstrates the legislature's intent to prohibit all discriminatory practices relating to employment under section 216.6, even those not specifically enumerated. Payment of wages is a mainstay of any employment relationship, and section 216.6 therefore encompasses discriminatory pay practices.

For example, in a 1996 case before our court, a female plaintiff brought a claim for loss of income, emotional distress, punitive damages, and attorney fees based on the allegation her employer paid her less than it paid men. *Dutcher v. Randall Foods*, 546 N.W.2d 889, 891 (Iowa 1996). The employer did not cross-appeal, so "we accept[ed] as established that Randall violated the . . . Iowa Civil Rights Act by paying Dutcher less than males in comparable positions." *Id.* at 892; *see also Bd. of Supervisors of Buchanan Cnty.*, 584 N.W.2d at 258 (acknowledging

that pay disparities could be evidence of gender-based discrimination for purposes of proving a claim under the ICRA).

We now turn to the real question in controversy—namely, the time period for which damages are recoverable. Dindinger and Loring argue that they should be able to recover for the entire period they were subject to discrimination in pay, so long as at least one paycheck fell within the 300 days prior to their filing a complaint with the commission. Allsteel and Mills urge us to conclude that the employer's initial pay-setting decisions were the relevant discriminatory practices, and because Dindinger and Loring filed complaints with the commission more than 300 days thereafter, their claims are time-barred. For reasons explained below, we adopt neither position, and instead conclude each paycheck is a discriminatory practice and a new 300-day limitations period applies to each check. This is essentially the view of the dissenters in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 643–45, 127 S. Ct. 2162, 2178–79, 167 L. Ed. 2d 982, 1001–03 (2007) (Ginsburg, J., dissenting), *superseded by statute*, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5 (codified as amended in scattered sections of 29 U.S.C. and 42 U.S.C.), and we believe it is both logical and consistent with Iowa precedent.

We begin by reviewing our relevant caselaw and its interplay with intervening decisions of the United States Supreme Court. Our narrative begins in 1990, when we addressed an ICRA claim brought by a woman of Vietnamese heritage who, for years, had been passed over for additional hours or for promotion. *See Hy-Vee Food Stores, Inc. v. Iowa Civil Rights Comm'n*, 453 N.W.2d 512, 528–29 (Iowa 1990). While the plaintiff established a prima facie case of employment discrimination based on national origin, the record also showed that the employer

sexually segregated its work force, reserving stocker positions (that were needed for promotion) to men. *Id.* at 521–24.

We rejected the employer's argument that the employee's complaint was untimely because the discriminatory conduct *began* outside the limitations period in Iowa Code section 601A.15 (1983), even though it continued into that period. *Id.* at 527–30. We elaborated on the elements of a continuing violation by analogizing to federal cases decided under the ICRA's federal counterpart, Title VII. *See id.* at 528–29. We stated,

> [T]he "continuing violation" doctrine does not excuse compliance with the time limits for filing a charge. But if a violation is continuing, the time does not begin to run when the discrimination first happens. Instead the action is considered filed in time if there are discriminatory acts within the limitations period.

*Id.* at 527.

Relying primarily on decisions of federal courts of appeals, we went on to describe two types of continuing violations, "a series of acts with one independent discriminatory act occurring within the charge-filing period" and the "maintenance of a system or policy which discriminates." *Id.* at 528 (internal quotation marks omitted). We explained that the first "series of acts" type of continuing violation is discerned by a multifactor approach that considers whether the conduct is recurring and frequent, yet seemingly nonpermanent. *See id.* at 528–29. We upheld the ICRC's findings that the employer's national origin discrimination was a continuing violation under the first theory, and its sex discrimination was a continuing violation under the second theory. *Id.* at 528–30.

Without further discussing the continuing violation doctrine, we then upheld the ICRC's decision to award back pay to the employee for

the *entire* time period when the employer failed to promote her or give her full-time status.  *Id.* at 530–32.

Twelve years after our decision in *Hy-Vee Food Stores*, the United States Supreme Court issued a decision that clarified when the continuing violation doctrine applies in federal employment discrimination cases.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111, 122 S. Ct. 2061, 2071, 153 L. Ed. 2d 106, 120–21 (2002). That case involved an African-American employee of Amtrak who alleged he had been subjected to repeated acts of racial discrimination.  *Id.* at 105, 122 S. Ct. at 2068, 153 L. Ed. 2d at 117.

The Court there rejected the idea that a series of related but separate acts constituted a continuing violation.  *Id.* at 111, 122 S. Ct. at 2071, 153 L. Ed. 2d at 120–21 ("There is simply no indication that the term '[employment] practice' converts related discrete acts into a single unlawful practice for the purposes of timely filing.")  The Court explained, "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act."  *Id.* at 113, 122 S. Ct. at 2072, 153 L. Ed. 2d at 122. Significantly, the Court quoted with approval a prior decision holding that " '[e]ach week's paycheck that deliver[ed] less to a black than to a similarly situated white is a wrong actionable under Title VII . . . .' "  *Id.* at 112, 122 S. Ct. at 2071, 153 L. Ed. 2d at 121 (quoting *Bazemore v. Friday*, 478 U.S. 385, 395, 106 S. Ct. 3000, 3006, 92 L. Ed. 2d 315, 328 (1986) (per curiam)).[6]  In short, the Supreme Court clarified that an

---

[6]Notably, after *Morgan*, lower federal courts stopped applying the continuing violation theory to wage discrimination cases.  *See* 2 Emp't Discrimination Coordinator: Analysis of Fed. Law § 73:22 (2014), *available at* www.westlaw.com ("Although prior to

independently actionable act of discrimination cannot be combined with other independently actionable acts (even of the same type) to create a continuing violation.

While the *Morgan* Court unanimously found that the continuing violation rule did not apply to discrete acts of discrimination, a majority of the Court would allow it to apply to hostile work environment claims, noting that such claims were "different in kind from discrete acts." *Id.* at 113–15, 122 S. Ct. at 2072–73, 153 L. Ed. 2d at 122–23. The Court explained that a hostile work environment claim "cannot be said to occur on any particular day," but "occurs over a series of days or perhaps years" and is "based on the cumulative effect of individual acts." *Id.* at 115, 122 S. Ct. at 2073, 153 L. Ed. 2d at 123. A single act of harassment may not rise to the level of an actionable hostile work environment claim. *See id.*

Before our court had the chance to address the continuing violation theory again in light of *Morgan,* the United States Court of Appeals for the Eighth Circuit decided *Madison v. IBP, Inc.,* 330 F.3d 1051 (8th Cir. 2003) (decision on remand). In *Madison,* the plaintiff had obtained a pre-*Morgan* recovery in federal court under both Title VII and the ICRA that was originally affirmed by the Eighth Circuit. *See Madison v. IBP, Inc.,* 257 F.3d 780, 784 (8th Cir. 2001). The Supreme Court subsequently vacated for reconsideration in light of *Morgan. Madison v. IBP, Inc.,* 536 U.S. 919, 919, 122 S. Ct. 2583, 2584, 153 L. Ed. 2d 773, 773 (2002). The Eighth Circuit then concluded that *Morgan* did not

---

*Morgan* many cases held that wage claims based on unequal pay for equal work (as opposed to a failure to promote case) should be treated as continuing violations, post *Morgan* cases now hold that the doctrine is no longer truly applicable to wage cases." (Footnotes omitted.)).

affect the ICRA recovery. *See Madison*, 330 F.3d at 1057–58. It reasoned that although *Morgan* had limited applicability of the continuing violation theory under federal employment discrimination law, Iowa had followed a separate course. *Id.* The Eighth Circuit said,

> In [*Hy-Vee Food Stores*, 453 N.W.2d at 530–31,] the Iowa Supreme Court adopted the continuing violation doctrine, permitting recovery for the entire period an employee's rights have been violated if at least one act of illegal discrimination occurred within the [required] period before a complaint was filed . . . .

*Id.* at 1054.

Dindinger and Loring rely heavily on *Hy-Vee Food Stores* and *Madison.* However, six months after *Madison,* we reexamined and clarified the scope of the continuing violation doctrine under the ICRA. *See Farmland Foods*, 672 N.W.2d at 740–41. *Farmland Foods* involved claims by an African-American employee of a meat packing plant that he had been repeatedly discriminated against over a fifteen-year period. *Id.* at 737–40. Among other things, the employee alleged Farmland had discriminated against him with respect to work assignments, work hours, and discipline. *Id.* at 738–39. "[M]ost of the evidence . . . concerned events that predated" the applicable statute of limitations. *Id.* at 741.

We made clear that notwithstanding *Hy-Vee Food Stores*, the continuing violation doctrine "applies differently to claims of discrete discriminatory acts than to claims of hostile work environment." *Farmland Foods*, 672 N.W.2d at 741 (citing *Morgan*, 536 U.S. at 110–21, 122 S. Ct. at 2070–76, 153 L. Ed. 2d at 120–27); *see also Hy-Vee Food Stores*, 453 N.W.2d at 527–29. Following the Supreme Court's lead in *Morgan*, we said that "[e]ach discrete discriminatory act or event is separately actionable, and a claim based on discrimination must be filed

within the relevant limitation period." *Farmland Foods*, 672 N.W.2d at 741. "This is true," we added, "even when the discrete discriminatory act relates to other acts alleged in a timely filed complaint." *Id.*

On this basis, we rejected the employee's racial discrimination claims as time-barred. *Id.* at 743. We considered each act of alleged discrimination on its own and noted that while some complained-of incidents had occurred within the limitations period, none of those matters amounted to a materially adverse employment action. *Id.* at 742–43. Separately, we acknowledged that the employee's hostile work environment claim *could* proceed on a continuing violation theory, because such claims "involve repeated conduct and are based on the cumulative impact of separate acts." *Id.* at 741 (citing *Morgan*, 536 U.S. at 115, 122 S. Ct. at 2073, 153 L. Ed. 2d at 123). But, we found no substantial evidence to support that claim, even when considering the totality of the employer's conduct for the duration of the employee's employment. *Id.* at 743–46.

Thus, in *Farmland Foods*, we adopted the "discrete acts" approach that had won the Supreme Court's unanimous approval in *Morgan*. *Id.* at 741; *see also Morgan*, 536 U.S. at 110–21, 122 S. Ct. at 2070–76, 153 L. Ed. 2d at 120–27. If an employer commits a discrete act of discrimination that can be the basis for a civil rights action, the statute of limitations begins to run on that act, even if the act is repeated and in that sense continues.

Four years after *Farmland Foods*, the United States Supreme Court rendered its controversial *Ledbetter* decision. *See Ledbetter*, 550 U.S. 618, 127 S. Ct. 2162, 167 L. Ed. 2d 982 (Alito, J., majority opinion). That case involved an employee who, for many years, had been paid less than her male counterparts, allegedly because of discriminatory reviews

by her supervisors. *Id.* at 621–22, 127 S. Ct. at 2165–66, 167 L. Ed. 2d at 988–89. She had abandoned any claim under the Equal Pay Act and was only pursuing relief under Title VII. *Id.* at 621, 127 S. Ct. at 2165, 167 L. Ed. 2d at 988. By a five-to-four margin, the Court held the discriminatory act that triggered the Title VII limitations period was the pay-setting decision, not the issuance of the discriminatory paycheck, and a plaintiff who did not file within the required period after the pay-setting decision could not recover at all. *See id.* at 621, 643, 127 S. Ct. at 2165, 2178, 167 L. Ed. 2d at 988, 1001.

Justice Ginsburg, dissenting with three other justices, urged that "each payment of a wage or salary infected by sex-based discrimination constitutes an unlawful employment practice." *Id.* at 646, 127 S. Ct. at 2179, 167 L. Ed. 2d at 1003 (Ginsburg, J., dissenting). Her dissent further noted that in a prior case, the Supreme Court "unanimously held that an employer . . . committed an unlawful employment practice each time it paid black employees less than similarly situated white employees." *Id.*, 127 S. Ct. at 2179–80, 167 L. Ed. 2d at 1003–04 (citing *Bazemore*, 478 U.S. at 395, 106 S. Ct. at 3006, 92 L. Ed. 2d at 328).

The year after *Ledbetter*, we decided *State ex rel. Claypool v. Evans*, 757 N.W.2d 166 (Iowa 2008). *Claypool* was a housing discrimination case. A condominium owner maintained that a developer had engaged in disability discrimination by selling a condominium that was not accessible to him in light of his progressive joint degeneration and difficulty with walking. *Id.* at 167–68. Although the complainant bought the condominium in 1999, he did not file a complaint with the ICRC until 2002. *Id.* at 167. To try to surmount the developer's statute of limitations defense, the ICRC and the complainant relied on the continuing violation theory. *Id.* at 171.

We rejected that theory, noting that "the specific discriminatory practice was the sale of a housing unit designed and constructed to be inaccessible to a person with disabilities." *Id.* at 172. We added, "This discriminatory practice was complete upon the sale." *Id.* We also discussed the *Ledbetter* decision, commenting that it "focused on the issue of continuing violation versus continuing effect." *Id.* at 171–72 (citing *Ledbetter*, 550 U.S. at 624–28, 127 S. Ct. at 2167–69, 167 L. Ed. 2d at 990–93 (Alito, J., majority opinion)). We observed that the housing case before us involved "a continuing effect of the discriminatory practice rather than a continuing violation." *Id.* at 172. Still, we did not adopt the specific holding of *Ledbetter*, and Dindinger and Loring correctly point out that *Claypool* is distinguishable on its facts from a wage discrimination case because there clearly could not have been a discriminatory practice committed by the developer *after* it sold the condominium in 1999. *See id.* at 167.

The next year, approximately three months before our general assembly amended the ICRA to add section 216.6A, Congress overturned *Ledbetter* by passing the Lilly Ledbetter Fair Pay Act of 2009 (FPA). The FPA provides that "an unlawful employment practice occurs . . . when an individual becomes subject to a discriminatory compensation decision or other practice, . . . including each time wages, benefits, or other compensation is paid." *Id.* at § 3 (codified at 42 U.S.C. 2000e–5(e)), The FPA also allows the victim of discrimination to recover back pay for up to two years preceding the filing of the charge. *Id.*

From the foregoing narrative, we can distill three lessons. First, in *Farmland Foods*, we aligned ourselves with the unanimous view of the Supreme Court in *Morgan* that the continuing violation doctrine does not apply to cases involving discrete discriminatory acts, as opposed to

hostile work environment claims. *See Farmland Foods*, 672 N.W.2d at 741; *see also Morgan*, 536 U.S. at 114–18, 122 S. Ct. at 2073–75, 153 L. Ed. 2d at 122–25. Discrete discriminatory acts are "separately actionable," not a basis for invoking the continuing violation theory. *Id.* Second, if there is no discriminatory act but only an effect of a past discriminatory act within the limitations period, then the claim is time-barred. *See Claypool*, 757 N.W.2d at 171–72. Third, conduct that is not separately actionable but may become actionable based upon its "cumulative impact" may be pursued on a continuing violation theory if some of the conduct occurred within the limitations period. *See Farmland Foods*, 672 N.W.2d at 741.

All of these principles are consistent with the language of the ICRA, which requires the complaint to be filed with the ICRC "within three hundred days after the alleged discriminatory or unfair practice occurred." Iowa Code § 216.15(13) (2011). Under this wording, which is similar to the federal wording, the relevant unit of analysis is the "discriminatory or unfair practice." *Compare id.*, *with* Lilly Ledbetter Fair Pay Act § 3 (codified at 42 U.S.C. 2000e–5(e)). If *more than one* discriminatory act has occurred, even if the same type of act is being repeated, the timeliness of each act should be evaluated individually. If *only one* act has occurred, it is sufficient if some of the relevant conduct occurred within the limitations period.

The question then is how to classify the act of paying a female employee less than her male counterpart where the discriminatory reasons for the wage discrepancy originated somewhere in the past. Is the too-low paycheck (1) a discrete act of discrimination, (2) merely an effect of prior discrimination, or (3) conduct that, to be actionable, must be weighed in its overall impact with other conduct?

We think the paycheck falls in the first category. Paying an employee in a protected class less than other employees, if done with discriminatory intent, is *always* separately actionable. It does not matter how many times the conduct occurred, and one does not need to consider other conduct to determine whether the employer has violated the law. Thus, under *Farmland Foods*, the limitations analysis goes paycheck by paycheck. 672 N.W.2d at 741. A discriminatory pay practice does not become *more* discriminatory each time a new check is paid, unlike a series of harassing incidents that may only amount to a hostile work environment when accumulated. A paycheck is precisely the type of discrete practice that we envisioned in *Farmland Foods* when we distinguished discrete acts from violations based on cumulative conduct. *Id.*[7]

On the other hand, we do not agree with the *Ledbetter* majority (or the defendants here) that an employer's issuance of a smaller paycheck to a protected class employee is merely an "effect" of a prior pay-setting decision, as opposed to an independent discriminatory act. *See Ledbetter*, 550 U.S. at 621, 624–25, 127 S. Ct. at 2165, 2167, 167 L. Ed. 2d at 988, 990. *Payment is itself an act*; this is not like *Claypool* where the developer sold the condominium and, after the sale, could not

---

[7]We note that under Iowa Code section 614.1(8), the same result would follow if the employer failed to pay wages to an employee. The employee may recover only for those nonpayments that took place within the limitations period. *See Gabelmann v. NFO, Inc.*, 571 N.W.2d 476, 482 (Iowa 1997).

In 2009, the legislature provided a different statute of limitations for claims under Iowa Code section 216.6A, allowing the employee to recover "for the period of time for which the complainant has been discriminated against." 2009 Iowa Acts ch. 96, § 3 (codified at Iowa Code § 216.15(9)(*a*)(9)(a)). This language appears to allow the employee to recover for the entire period of discrimination, so long as some equal pay violation occurred within 300 days of the employee's administrative complaint. But the fact that the legislature inserted this language for section 216.6A claims suggests that it did not believe the existing language in section 216.15 had that effect.

have committed discriminatory acts with respect to that condominium. *See* 757 N.W.2d at 172. The law frequently, as in the case of the ICRA, requires a combination of an act and intent to impose liability. Yet, the two do not have to arise at the same time so long as they are connected. For example, would an employer that hired a new female employee be able to escape liability simply because it based her low compensation on a discriminatory pay scale it had adopted ten years before? Clearly not.[8]

A pay-setting decision alone is not actionable unless accompanied by unequal payments. Accordingly, it seems unfair to tie the statute of limitations to an event that, by itself, would be insufficient to trigger liability. At the same time, an employer may reasonably be held liable for failing to pay an employee properly at any time within the limitations period, since the employer always has the ability to reexamine and correct an improper pay-setting decision.

Other state courts, applying their own states' civil rights laws, have determined that disparate paychecks are discrete discriminatory practices. For example, the Supreme Judicial Court of Massachusetts declined to apply the continuing violation theory to unequal pay claims under its state equal rights law. *See Silvestris v. Tantasqua Reg'l Sch. Dist.*, 847 N.E.2d 328, 338 (Mass. 2006). In *Silvestris*, two female teachers brought an action against a school district, alleging they were

---

[8]When interpreting the ICRA, we have not always followed federal interpretations of similar language in the federal civil rights statutes. *See Goodpaster v. Schwan's Home Serv., Inc.*, 849 N.W.2d 1, 11–13 (Iowa 2014) (concluding multiple sclerosis can be a disability under the ICRA). Departure from federal precedent in this case is appropriate. The United States Supreme Court's decision in *Ledbetter*, we believe, is inconsistent with the language of the ICRA, with *Morgan*, and with *Farmland Foods*. Our decision in *Farmland Foods* treats each independent discriminatory act as a separate unit for statute of limitations purposes. 672 N.W.2d at 741. Discrete acts of discrimination do not become timely merely because they have been repeated, or untimely merely because they have occurred before.

paid less than their male counterparts. *Id.* at 330. The court ultimately found no violation of the Massachusetts equal rights law, but in doing so, it determined the continuing violation theory should not apply to unequal compensation claims under state law. *See id.* at 338, 343. The court decided each paycheck should be treated as a discrete act because "[a]n alleged inequality can be identified on examination of individual paychecks, rather than on the evaluation of ongoing wrongful conduct." *Id.* at 338. It noted that applying the continuing violation doctrine "would eviscerate the one-year statute of limitations set forth in" the statute. *Id.* at 338–39. It therefore concluded that pay claims give rise to a cause of action subject to its own statute of limitations period each time a paycheck is issued. *See id.* at 339.

The New Jersey Supreme Court similarly concluded that under its state wage discrimination law, each payment of unequal wages was an actionable wrong subject to a two-year statute of limitations. *Alexander v. Seton Hall Univ.*, 8 A.3d 198, 199 (N.J. 2010). Three female professors brought an action against Seton Hall University alleging unequal pay on the basis of sex and age. *Id.* at 200. The lower court followed the *Ledbetter* majority and dismissed the professors' claims as untimely because they had not been filed within two years of the pay-setting decision. *See id.* at 199. The New Jersey Supreme Court reversed. *Id.* at 199–200. It declined to follow the approach of the *Ledbetter* majority and also declined to apply the continuing violation doctrine to wage discrimination claims. *Id.* at 205–06. Instead, it adopted the same analysis we follow today, noting it had previously approved the rationale of *Morgan*, which distinguished between discrete acts of discrimination and hostile work environment claims. *See id.* at 203 (citing *Morgan*, 536

U.S. at 115, 122 S. Ct. at 2073–74, 153 L. Ed. 2d at 123). The court concluded,

> Each payment of such discriminatory wages thus constitutes a renewed separable and actionable wrong that is remediable under the [wage discrimination law]. The two-year statute of limitations applies to such violations, cutting off the untimely portion and, as a result, operating as a limit on the back period for which a plaintiff may seek recovery . . . .

*Id.* at 207. The court therefore held the plaintiffs' claims were timely with respect only to paychecks received in the two years immediately preceding the filing of the lawsuit. *Id.*

In *Zuurbier v. Medstar Health, Inc.*, a female physician alleged pay discrimination under the District of Columbia's human rights act. 895 A.2d 905, 906 (D.C. 2006). The United States Court of Appeals for the D.C. Circuit followed the logic of *Morgan* to conclude that each discriminatory paycheck was a discrete act subject to its own limitations period. *Id.* at 910–14. The court therefore limited the plaintiff's recovery to the three paychecks received within the applicable limitations period. *Id.* at 914.

The chief legal counsel of the Illinois Department of Human Rights has also stated that each paycheck is a discrete incident for purposes of wage discrimination claims under Illinois law. *Budzileni v. Dep't of Human Rights*, 910 N.E.2d 1190, 1200 (Ill. App. Ct. 2009). On appeal, the petitioner in that case conceded that her claims for paychecks received outside the limitations period were untimely. *See id.* at 1206.

In a 2003 case, the Appellate Division of the New York Supreme Court relied heavily on then-existing federal precedent to determine that although each paycheck constitutes a separate harm subject to its own limitations period, the statute of limitations does not prevent a plaintiff from introducing evidence of unequal pay that occurred outside the

limitations period to establish her prima facie case. *Kent v. Papert Cos.*, 764 N.Y.S.2d 675, 679–80 (App. Div. 2003). We are unaware of the New York appellate courts changing their position in light of *Ledbetter*.

Other courts have pursued different approaches to unequal pay claims based on their respective state-law statutes and precedents. In *Prairie View A&M University v. Chatha*, the Texas Supreme Court followed the rationale espoused in the *Ledbetter* majority that the pay-setting decision triggers the limitations period while subsequent paychecks are merely lingering effects of the discrimination. 381 S.W.3d 500, 510 (Tex. 2012). The court referenced a previous case in which it held the limitations period for employment discrimination "commences 'when the employee is informed of the allegedly discriminatory employment decision, not when that decision comes to fruition.'" *Id.* at 505 (quoting *Specialty Retailers v. DeMoranville*, 933 S.W.2d 490, 493 (Tex. 1996)). Based on the logic of this prior case, the Texas Supreme Court concluded this "rule applies with equal force in the context of pay discrimination decisions." *Id.* at 509. It held only the pay-setting decision was a discrete act and "[s]ubsequent paychecks . . . are merely consequences of past discrimination." *Id.* at 510.

In contrast to the Texas approach, the Wisconsin Court of Appeals recently applied the continuing violation principle to wage discrimination claims. *Rice Lake Harley Davidson v. State*, 855 N.W.2d 882, 893–94 (Wis. Ct. App. 2014). The court noted that Wisconsin had chosen to apply the continuing violation theory to unequal pay claims nearly twenty years earlier, before *Morgan* was decided. *See id.* at 893 (citing *Abbyland Processing v. State*, 557 N.W.2d 419, 422 (Wis. 1996)). The court declined to follow intervening federal interpretations of wage

discrimination cases and instead adhered to prior authority of the Wisconsin Supreme Court. *See id.* at 894–95.

Because of specific Ohio statutory language, the Ohio Supreme Court has applied the continuing violation doctrine to its state wage discrimination law. *See Featzka v. Millcraft Paper Co.*, 405 N.E.2d 264, 266–67 (Ohio 1980). Ohio law provides for recovery " 'from the date of the commencement of the violation.' " *Id.* at 266 (quoting Ohio Rev. Code Ann. § 4111.17(D)). The court relied on this language to conclude, "the legislature clearly indicated its intent to permit recovery from the beginning of the prohibited discrimination until its termination." *Id.* at 267. Similarly, in a certified question from the Eastern District of Tennessee, the Supreme Court of Tennessee determined that wage discrimination claims under Tennessee law were continuing violations. *Booker v. Boeing Co.*, 188 S.W.3d 639, 641 (Tenn. 2006). It reached this conclusion based on the language of the state human rights act, which allowed recovery if a claim was filed within one year " 'after the alleged discriminatory practice ceases.' " *Id.* at 642 (quoting Tenn. Code. Ann. § 4–21–311(d) (2005)). The court contrasted this wording with that of Title VII, which allowed recovery within a set period " 'after the alleged unlawful employment practice *occurred*.' " *Id.* at 648 (quoting 42 U.S.C. 2000e–5(e)(1)). The court reasoned a discriminatory pay rate "does not cease each time an employee receives a paycheck" but only "when the employer brings the employee into parity with his or her peers." *Id.* at 648. Therefore, the court determined the legislature had intended to incorporate the continuing violation doctrine into the wage discrimination statute by using the word "ceases." *See id.*

Except for the new cause of action added in 2009, the ICRA does not have language as in Ohio or Tennessee that would allow the claimant

to revert to the date when the employer initially discriminated against the employee. And unlike Wisconsin, we have expressly adopted the discrete acts approach to the statute of limitations set forth in *Morgan.* *See Farmland Foods*, 672 N.W.2d at 741. We therefore believe that the District of Columbia, Illinois, Massachusetts, New Jersey, and New York have it right: Separate discriminatory paychecks should be evaluated separately for limitations purposes. *See Zuurbier*, 895 A.2d at 910–14; *Budzileni*, 910 N.E.2d at 1200 (noting the chief legal counsel's instruction that "each alleged payment of unequal wages [is] a separate and discrete incident"); *Silvestris*, 847 N.E.2d at 338; *Alexander*, 8 A.3d at 207; *Kent*, 764 N.Y.S.2d at 679.[9]

---

[9]Dindinger and Loring also rely on a longstanding ICRC regulation, which provides:

> **3.3(2)** *Continuing violation.* If the alleged unlawful discriminatory practice or act is of a continuing nature, the date of the occurrence of the alleged unlawful practice shall be deemed to be any date subsequent to the commencement of the alleged unlawful practice up to and including the date upon which the unlawful practice has ceased.

Iowa Admin. Code r. 161—3.3(2). We agree with Allsteel and Mills that this regulation essentially restates the present question without answering it. The question remains: Were there multiple discriminatory acts or was there one act of a continuing nature? Notably, when we addressed the continuing violation theory in *Claypool*, we did not give any deference to the ICRC's views or cite to this regulation. *See* 757 N.W.2d at 169, 171–72 (reviewing for correction of errors at law).

In *Renda v. Iowa Civil Rights Commission*, a case involving the ICRC, we discussed at length when judicial deference is owed to an administrative agency's statutory interpretation. *See* 784 N.W.2d 8, 10–15 (Iowa 2010); *see also* Iowa Code §§ 17A.19(10)(*c*), (*l*). We emphasized that "each case requires a careful look at the specific language the agency has interpreted as well as the specific duties and authority given to the agency with respect to enforcing particular statutes." *Renda*, 784 N.W.2d at 13. We have given deference to agency interpretations of "a substantive term within the special expertise of the agency," but not a term with "an independent legal definition that is not uniquely within the subject matter expertise of the agency." *Id.* at 14. There, we ultimately concluded the ICRC was not clearly vested with authority to interpret the terms "employee" and "dwelling." *See id.* at 14–15. Here, the question is really one of interpreting the term "practice"—do we have one or more than one? Like the definitions of employee and dwelling, this matter is not uniquely within the expertise of the ICRC. Hence, we believe the ICRC's regulation would not be entitled to deference, even if it answered the question.

For all these reasons, we conclude an employee can assert a wage discrimination claim under Iowa Code section 216.6. The plaintiff's lost-income recovery is based upon pay that should have been received within the 300-day limitations period set forth in Iowa Code section 216.15(13).

## IV. Conclusion.

We have provided the answers to the certified questions as set forth above. Costs shall be equally divided between the parties. Iowa Code § 684A.5.

**CERTIFIED QUESTIONS ANSWERED.**

---

The rule that the statute of limitations applies separately to separately actionable harms is consistent with the common law. *See Hegg v. Hawkeye Tri-County REC*, 512 N.W.2d 558, 559–60 (Iowa 1994) ("[W]here the wrongful act is continuous or repeated, so that separate and successive actions for damages arise, the statute of limitations runs as to these latter actions at the date of their accrual, not from the date of the first wrong in the series."); 1 Dan B. Dobbs et al., *The Law of Torts* § 245, at 892 (2d ed. 2011) ("[I]f the continuing negligence causes a series of separate harms, each one actionable, the statute of limitations may begin on each harm separately, so that the plaintiff might be barred as to earlier acts of negligence but not as to later ones.").